Filed 12/16/13  P. v. Delena CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


THE PEOPLE,

    Plaintiff and Respondent,

v.

DAVID IGNACIO DELENA, JR.,

    Defendant and Appellant.

E056696

(Super.Ct.No. FVI1101849)

OPINION


APPEAL from the Superior Court of San Bernardino County.  Elia V. Pirozzi, Judge.  Affirmed with directions.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Respondent.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Lilia E. Garcia, and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Appellant.

1

I

INTRODUCTION

Defendant David Ignacio Delena, Jr., molested his two stepdaughters.  A jury convicted defendant of two counts of continuous and substantial sexual abuse of a child under the age of 14 with special allegations for multiple victims.  (Pen. Code, §§ 288.5, subd. (a), and 667.61, subds. (b) and (e).)[1]  The trial court sentenced defendant to two consecutive indeterminate prison terms of 15 years to life with the possibility of parole.

On appeal, defendant seeks to have the case remanded for resentencing.  We affirm the judgment but remand the matter for resentencing on count 1 and for the court to exercise its discretion as to whether the sentences should be consecutive.

II

STATEMENT OF FACTS

*A.  J.R.'s Testimony*

J.R. had two daughters, Z.R., born in March 1993, and R.R. born in September 1995.  J.R. started dating defendant in 2001.  J.R. and defendant eventually married and, in 2008, they divorced.

For about 18 months, from January 2003 to June 2004, the family lived in an apartment on Bear Valley Road in Apple Valley.  Thereafter the family moved in with

_____

[1]  All further statutory references are to the Penal Code.

J.R.'s parents in Victorville before moving to a home on Tutelo Street in Apple Valley where they lived for a year or a year and a half between 2004 and 2006. In June or December 2006, the family returned to the Victorville home for about two years (except for one month in Silver Lakes) until the marriage ended and J.R. and her daughters moved to Texas. In 2008, defendant began an affair with another woman. He was frequently absent from the house and argued with J.R.

In August 2010, while in Texas, Z.R. told her mother that defendant had sexually molested her and J.R. made a report to the police in El Paso. Soon after, R.R. told her mother that defendant had also sexually molested her.

At trial, J.R. identified a handwritten letter sent in July 2002 from defendant to R.R. in which he stated, "can't wait to go home so you can sleep by me and so we can go to McDonald's or Chuck e. Cheese or to my house."

J.R. testified that defendant played with her daughters by tackling them to the ground or by wrestling them on the couch. Reyes remembered an incident between Z.R. and defendant in which Z.R. was screaming, crying, and dressed only in an open robe. Z.R. was getting off a bed, and defendant was standing over her. Z.R. normally dressed in a robe after showering.

B. Z.R.'s Testimony

Z.R. was 18 years old when she testified at trial in December 2011. She admitted that she did not like her mother dating defendant and that she was not close to her mother

3

at the time. Defendant would tackle Z.R. and smack her buttocks with frequency. He rubbed against her while she was on the floor and made her uncomfortable. Other people were in the room when the roughhousing was happening.

Defendant started sexually touching Z.R. in the fourth grade when she was 10 years old and living on Bear Valley Road in 2003. Defendant would touch her breasts, rub against her buttocks, and touch her genitals over her clothes. It happened every day, more than 50 times, and for longer periods than others, depending on whether other people were around. She did not complain because she was afraid of defendant and did not want to cause trouble in the family.

Because Z.R. was born in March 1993, she turned 12 years old in March 2005 and attended 7th grade for the 2005-2006 school year and 8th grade for the 2006-2007 school year. Z.R. specifically remembered three incidents occurring in 2005 and 2006.

When Z.R. was in the seventh or eighth grade, the family was living on Tutelo Street (in 2005 or 2006). On a summer night, Z.R. and her brothers and sisters were asleep. When Z.R. awoke, defendant was on top of her and his penis was inside her vagina. Defendant whispered to her that he "wanted her" and was moving up and down on her. He did not ejaculate. She did not disclose the incident because she did not want anyone to be mad at her.

A second incident occurred when they were living in Victorville (before June or December 2006) and Z.R. was 13 years old or younger. Z.R. had just finished showering

4

and was wearing a robe. Defendant pushed her on the bed, opened her robe, and got on top of her while clothed. She screamed and ran from the room and told her mother, who was in the shower. Then she went to the garage to get some clothes from the dryer. Defendant followed her and told her no one would believe her. A third incident happened in Victorville when defendant rubbed against her in the hallway after tackling her to the floor.

Z.R. lived with her aunt, M.R., during the ninth grade for the 2007-2008 school year. M.R. testified that Z.R. told her about the shower incident in August 2007. Z.R. said defendant had opened her robe. Z.R. also disclosed the Apple Valley incident where defendant had laid on top of her and said he "wanted her." Z.R begged M.R not to tell her mother. M.R. did not think Z.R. was being molested although she believed defendant's actions were sexually inappropriate.

After Z.R. returned from living with her aunt, defendant never touched her again. Z.R. told her mother about the molestation in August 2010, when the family was living in Texas.

*C. R.R.'s Testimony*

R.R. was 16 years old when she testified. Defendant began touching her sexually after she turned 12 years old in September 2007 and began menstruating. While they watched television, defendant would touch her on the inside and outside of her thighs. He would move her out of the way by touching her thighs or buttocks. When they were

5

alone and lying down, he would move her shorts and underwear to the side and rub his penis on her buttocks and genitals. He would roll her on the side and rub against her from behind. She sometimes felt wet and sticky on her back. R.R. did not tell her mother because she was scared that defendant would hurt her family.

On another occasion, defendant came into her room during a party. She pretended to be asleep and defendant began rubbing her genitals with his penis. Once defendant took her to get ice cream. Defendant pulled off the road and lifted her on to the trunk of the car, a Kia, and rubbed his penis on her genitals. After a couple of minutes, he pulled her off the car and they left. She did not know if he ejaculated. Twice defendant tried to put his fingers in her vagina and R.R. stopped him by saying she needed to use the bathroom.

The touching occurred more than 60 times between the ages of 12 and 14. R.R. was mad at defendant for leaving her mother because she did not want to move to Texas.

After their mother told R.R. that Z.R. had disclosed defendant touching her, R.R. also told their mother. R.R. had told defendant's sister and her cousins about the molestations.

*D. Defense Evidence*

Defendant's sisters, Yvonne and Christine, lived with defendant and the victims at various times. Yvonne watched the girls while defendant and J.R. were working. Defendant roughhoused with the girls but Yvonne never saw anything sexual. The

6

children never said anything was wrong. Christine also never saw inappropriate behavior and R.R. never told her about molestations. Christine had been molested in the past by an uncle and was very sensitive to the issue and would remember such information.

Maryann I. started dating defendant in 2008. He left J.R. and they moved in together in November 2008. J.R. once came into the house, yelling obscenities and threats. J.R. tried to hit Maryann and threatened to damage her car unless defendant left with her. Maryann never saw defendant behave inappropriately with her children.

Detective William Lamb interviewed Z.R. and her mother in Texas by telephone. Z.R. said the incident in which defendant penetrated her lasted for 10 to 15 minutes. J.R. said that, during the shower incident, she entered the room and saw Z.R. sitting on her bed, straightening a towel. J.R. explained the Kia was non-operative and could not be driven. J.R. had a normal sexual relationship with defendant.

Detective Julie Brumm also interviewed J.R. and her daughters. J.R. told Brumm that defendant did not leave permanently until October 2008. R.R. claimed that the molestations continued until she was 14 in September 2009, after defendant had moved out of the house. R.R. said the molestation on the trunk of the car occurred in October 2008. Again J.R. told Brumm that the Kia was inoperable.

III

DISCUSSION

The issue on count 1 is whether defendant committed an offense against Z.R. after

7

September 20, 2006, the date that a violation of section 288.5 was added to the section 667.61 sentencing scheme—the One Strike Law—as a qualifying sexual violation. Defendant contends that his 15-years-to-life prison term, based on his conviction for continuous sexual abuse of Z.R. (§ 288.5, subd. (a)) should be stricken as a prohibited ex post facto application of law because the evidence did not establish he engaged in sexual lewd acts upon Z.R. after September 20, 2006. Defendant asks that this court reverse his sentence for count 1 and remand the matter to the trial court for resentencing under the determinate sentencing scheme of section 288.5.

Defendant does not challenge his life sentence for count 2, for committing continuous sexual lewd acts upon R.R., based on the court's application of the same September 2006 amendment to the section 667.61 sentencing scheme. He argues, however, the court did not exercise its discretion in sentencing defendant consecutively. The People agree with that contention.

A. *Count 1—Ex Post Facto Law*

State and federal constitutional law proscribes ex post facto laws and protects against the later adoption of a statute that inflicts greater punishment than the law in effect at the time of the commission of the crime. (*People v. Riskin* (2006) 143 Cal.App.4th 234, 244; *People v. Hiscox* (2006) 136 Cal.App.4th 253, 257.) The prosecution bears the burden of proving that the charged offense occurred on or after the effective date of the statute under which defendant will be punished. (*Hiscox,* at p. 256.)

An ex post facto violation resulting in an unauthorized sentence may be raised on appeal even if the defendant failed to object below. (*Id.* at p. 258.) Review of an ex post facto claim is de novo under the harmless error analysis. (*Id.* at p. 261; *Chapman v. California* (1967) 386 U.S. 18, 24.)

Where the jury was not asked to make a finding that the offense occurred after the effective date of the statute, the verdicts cannot be deemed sufficient to establish the date of the offenses unless the evidence leaves no reasonable doubt that the underlying charges pertained to events occurring on or after the effective date of the statute. (*People v. Hiscox, supra*, 136 Cal.App.4th at p. 261.) A reviewing court cannot review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date. For a court to hypothesize which acts the jury may have based its verdicts on, or what dates might be attached to certain acts based on ambiguous evidence, would amount to "judicial impingement" upon the traditional role of the jury. (*Ibid.*)

The parties agree defendant cannot be punished under the One Strike Law if none of the three acts relied upon by the jury occurred after September 20, 2006. In order to qualify for sentencing under the One Strike Law, the evidence must establish that defendant molested Z.R. after September 20, 2006, when Z.R was still 13 years old, and before she turned 14 in March 2007.

9

Based on our independent review of the record, we cannot find evidence leaving no reasonable doubt that the underlying charges pertained to events occurring on or after September 20, 2006. (*People v. Hiscox, supra*, 136 Cal.App.4th at p. 261.)

Z.R. testified that appellant began "roughhousing" with her and touching her in sexual ways when she was about 10 or 11 years old (about March 2003 or March 2004), in fourth grade (2002-2003), and living in the Bear Valley Road residence.

Because Z.R. was born in March 1993, she was 11 and 12 years old in 2005, 12 and 13 in 2006, and 13 and 14 in 2007. From 2004 to 2006, the family lived in Victorville and then on Tutelo Street. From June or December 2006 to 2008, the family lived in Victorville and Silver Lakes.

In 2005 and 2006, when Z.R. was 12 or 13 years old and in the 7th and 8th grades, the family lived on Tutelo Street until June or December 2006. During that time, defendant awoke her and penetrated her. The shower incident occurred between June and December 2006 or in 2007 after the family began living in Victorville again and when Z.R was 13 years old. Another incident occurred sometime in 2006. The evidence does not establish whether any of the three incidents occurred before or after September 20, 2006.

Although respondent tries to tie the three incidents to specific dates, the dates are based on speculation. For example, Z.R. disclosed the shower incident to her aunt in August 2007. But there is no mention of a specific date when Z.R. moved in with her

10

aunt in the pages cited by respondent. Nothing in the record shows the shower incident occurred between September 20, 2006, and March 2007 when Z.R. turned 14. If the shower incident happened after she turned 14, it was a different criminal offense.

The evidence about penile penetration also was inconclusive. Z.R. said it happened when she was living on Tutelo Street and she was in the 7th or 8th grade. But it is impossible to determine from the record whether it happened before or after September 20, 2006. The fact that Z.R. said it was summer suggested it may have happened in August or early September of 2005 or 2006. But the record is uncertain on this point. Respondent claims that when "the family resided in the Tutelo Street residence, this sex act could conceivably [have] occurred between September 20, 2006 . . . and December 2006, . . ." when the family returned to Victorville. But it could also have occurred before September 2006. Based on this record, we can only speculate that defendant persisted in the ongoing abuse after September 20, 2006.

Respondent's speculations cannot overcome the *Chapman* standard: "By definition, 'substantial evidence' requires evidence and not mere speculation. In any given case, one 'may speculate about any number of scenarios that may have occurred . . . . A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere

11

speculation as to probabilities without evidence.""" (*People v. Cluff* (2001) 87 Cal.App.4th 991, 1002, citing *People v. Morris* (1988) 46 Cal.3d 1, 21.)

When the evidence regarding a particular issue is circumstantial, the appellate court must scrutinize that evidence even more closely to determine whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Kunkin* (1973) 9 Cal.3d 245, 250.) "Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence, it merely raises a possibility, and this is not a sufficient basis for an inference of fact." (*People v. Redmond* (1969) 71 Cal.2d 745, 755; *Kunkin,* at p. 250.) Without an explicit determination by the jury regarding the acts upon which they relied, there is no way to know how they determined which acts made up the violation of count 1.

As the court stated in *People v. Hiscox, supra*, 136 Cal.App.4th at page 261: "It would be inappropriate for us to review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date. Hiscox has a constitutional right to be sentenced under the terms of the laws in effect when he committed his offenses. For a court to hypothesize which acts the jury may have based its verdicts on, or what dates might be attached to certain acts based on ambiguous evidence, would amount to 'judicial impingement upon the traditional role of the jury.' (*Blakely v. Washington*[ (2004) 542 U.S. 296,] at p. 309.)"

12

Thus we remand to the trial court for resentencing on count 1 according to section 288.5. Before the September 2006 amendment of section 667.61, punishment for violating section 288.5 was imposition of a state prison for a term of six, 12, or 16 years. (Stats. 1989, c. 1402, § 4.) On remand, the trial court will be required to decide which of the determinate sentence terms to impose with respect to defendant's conviction for count 1.

## B. *Remand for Resentencing on Count 2*

The People agree with defendant that his case must be remanded to the trial court to exercise its discretion in deciding to impose concurrent or consecutive sentences for defendant's two guilty verdicts under section 667.61. The September 20, 2006, amendment of section 667.61, added subdivision (i), to that section which provided: "(i) For any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." While mandating that convictions for certain sex crimes committed upon multiple victims must be sentenced consecutive to each other, subdivision (i) did not statutorily mandate that violations of continuous sexual abuse of a child (§ 288.5) involving multiple victims, of which defendant was convicted here, and which was added to the list of prohibited violations as subdivision (c)(9), also be imposed consecutive to one another. Because sentence for

13

violation of section 288.5 involving multiple victims was not mandated to be consecutively imposed, the trial court had discretion to impose sentence for counts 1 and 2 concurrently.

A trial court must "state the reasons for its sentence choice on the record at the time of sentencing." (§ 1170, subd. (c).) Absent an express statutory provision to the contrary, a trial court retains discretion to impose either consecutive or concurrent indeterminate terms under the One Strike Law. *People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262-1263, explained that "although the statutory language of section 667.61, subdivision (b), mandates the imposition of 15 years to life for *each* count involving separate occasions and separate victims, section 667.61 does *not* mandate that those terms must be served consecutively," citing former subdivision (g) of section 667.61.

Review of the trial court's colloquy with the prosecutor and defense counsel at sentencing reveals the court interpreted section 667.61 as mandatorily requiring all sentences involving the violation of prohibited sex crimes involving multiple victims be imposed and served consecutive to one another. However, review of subdivision (i) of section 667.61 shows that the mandatory sentence provision of section 667.61 specifically excluded continuous sexual abuse of a child (§ 288.5) (listed as subd. (c)(9), in § 667.61) from that list of crimes involving multiple victims for which consecutive sentences must be imposed. (§ 667.61, subd. (i).)

Applying *Rodriguez* to this case, because section 667.61 did not expressly mandate consecutive sentences be served by a defendant convicted of violations of continuous sexual abuse of a child involving multiple victims, the trial court had discretion to order defendant serve his sentences for his section 288.5 convictions in counts 1 and 2, concurrently or consecutively to each other. Because the court did not exercise its discretion as required by section 1170, subdivision (c), this case must be remanded to allow the court to exercise that discretion.

IV

DISPOSITION

We affirm the judgment but direct the trial court to impose a prison term on count 1 according to the section 288.5 sentencing scheme in effect before the September 2006 amendment of section 667.61. The trial court should also exercise its discretion to decide whether defendant's sentences should be served consecutively.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

15