Filed 10/27/14  P. v. Sias CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C070362 |
| Plaintiff and Respondent, | (Super. Ct. Nos. NCR69295, NCR81566) |
| v. | |
| STEVEN CHRISTOPHER SIAS, | |
| Defendant and Appellant. | |

Defendant Steven Christopher Sias pleaded guilty to failing to register as a sex offender (Pen. Code, § 290.012, subd. (a))[1] and admitted a 2006 prior strike conviction for continuous sexual abuse of a child (§ 1170.12, subds. (a)-(d)).  He was sentenced to an aggregate term of seven years four months in state prison.  On appeal, defendant contends the trial court abused its discretion by not dismissing his single strike allegation pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  The

---

[1]    Undesignated statutory references are to the Penal Code at the time of defendant's crimes.

court's refusal to dismiss the strike allegation resulted in an additional eight month sentence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 2006 Strike Conviction--Continuous Sexual Abuse of a Child

Between April 2004 and December 2005, defendant sexually molested a young girl. Defendant was 16 years old when he began the molestations and 18 when he was arrested. His victim was nine years old when the molestations started and 11 when defendant was arrested. Defendant's mother was the babysitter for the victim and her siblings.

On numerous occasions, when the victim was watching television or playing video games in defendant's bedroom, defendant would close the door and molest her. He put his fingers in her vagina and made her hold his penis. He sometimes pulled her hair, forced her to participate in the molestation, used toy handcuffs to tie her hands and left her with her hands tied over a closet pole in a dark closet. He threatened that if she told anyone about the molestation, he would do the same things to her younger sister. Defendant's brother had molested the younger sister several years earlier.

Defendant admitted he molested the victim, but denied using any force. He claimed he did not remember who initiated the sexual activity. But, eventually he came to believe he loved the victim and wanted to marry her. He reported he was "kind of sorry" for what he did "back then."

At the time of the offense, defendant was working part time at a fast food restaurant. He said his future goal was to be a chef and he had begun looking into the entrance criteria and cost of culinary institutes. He also was considering joining the military or becoming a computer game designer.

Defendant pleaded guilty to continuous sexual abuse of a child. The trial court referred defendant for a diagnostic examination with Dr. Kent Caruso. (§ 288.1.)

Dr. Caruso found defendant was "psychologically naive and uninsightful," but adequate as a historian. Defendant's short and long term memory functions were intact and his "[f]reedom from distractibility" was good. In vocabulary skills and general reasoning and logical thinking, including the "ability to make good judgment and common sense decisions," defendant scored toward the bottom end of the borderline mental retardation range. Dr. Caruso noted that it would have been helpful to have better information on defendant's "family system dynamic, especially and particularly since [defendant] is following in his 20 year old brother's footsteps with regard to now having a significant history of sexually exploiting a younger female. [F]or some reason or another, . . . he and his full brother have exhibited some very serious psychological problems." As mitigating circumstances, Dr. Caruso noted defendant admitted his offense early on, and had a supportive family in the area, although this was the "same home as their other son who also has the kind and quality of history which may indicate that he is a pedophile." Dr. Caruso also found circumstances in aggravation. These included: defendant's age and the age of the victim when the abuse happened; defendant's statements that he was in love with the victim; and the absence of involvement with normal social-peer relationships, including any age appropriate females. Based on these factors, Dr. Caruso opined defendant was "at least an emerging pedophile."

Dr. Caruso concluded defendant was "rather emotionally detached, . . . very lacking in social skills, psychological insight, . . . and . . . is highly restricted in terms of his overall patterns of age appropriate functioning and adaptability. [Defendant] . . . has spent more time and energy pursuing activities such as watching horror movies and playing video games than engaging himself in peer relationships." Dr. Caruso concluded defendant would be difficult to work with and was a poor candidate for a sex offender rehabilitation treatment program. He wrote, "[g]iven [defendant's] personality characteristics and attributes, his lowered intelligence, his lack of capacity for developing

3

insight, and even the fact that his brother too was a sex offender, lead me to believe that [defendant's] prognosis is poor. I am of the opinion that he would be or remain a moderate to high risk, therefore, to other children in the community." Dr. Caruso recommended, if possible, defendant be housed in the Juvenile Criminal Justice System, with a subsequent referral to the Sex Offender Treatment Program or Mental Health Program within the California Youth Authority.

After reviewing the probation report and recommendation of Dr. Caruso, the trial court ordered a section 1203.03 diagnostic commitment.

During the section 1203.03 evaluation, defendant was evaluated by staff psychologist, Dr. Lloyd Crawford. Defendant was assessed as having normal cognitive function. Defendant described his typical day to Dr. Crawford, as "sleeping in until late morning or early afternoon. When awake he watches TV or plays his video games." Dr. Crawford described defendant as young and immature and noted defendant's depression, lack of social skills, and avoidance of social situations likely contributed to the offense. When he began working at the fast food restaurant, his depression improved. Dr. Crawford believed those problems needed to be addressed and defendant's social skills developed. He also expressed concern that defendant had "little to no outlet for his interest in the opposite sex. He is socially inept and avoids seeking out situations where he could develop his skills. The pattern of depression and social ineptness creates concerns that his outlets for his sexual urges may find inappropriate targets for gratification." Dr. Crawford also believed defendant required close supervision with mental health and sex offender treatment programs.

The correctional counselors and associate warden agreed defendant had accepted full responsibility for his actions. The associate warden noted defendant had no prior arrest history, was a juvenile at the time of the offense and concluded defendant's actions were the result of poor judgment rather than a pattern of criminal behavior. The correctional counselors and associate warden recommended granting defendant probation

4

with strict conditions of probation, including mental health treatment, social skill development, sex offender treatment, and frequent contact with his probation officer.

In a supplemental interview with the probation department, defendant said he felt " 'really bad' about what he did." He was willing to comply with probation, wanted to get a job, and attend college. The probation officer recommended the trial court grant defendant probation.

The trial court considered the various reports, suspended imposition of sentence, and granted defendant probation. Among the terms and conditions of probation, defendant was to seek and maintain employment, keep the probation officer informed of his correct address, participate in counseling programs, complete a sexual offender treatment program, and register as a sex offender.

Four months after the trial court placed defendant on probation, the probation officer reported defendant had been attempting to comply with probation and was attending sex offender, mental health, and drug and alcohol services as directed. It was noted "[h]e is very immature and his therapist feels he is at a very high risk of re-offending. It is also felt he is now a greater threat to the community. [¶] The probation officer and therapist have learned the defendant has several other victims ranging from one to three years of age. He has also reported other deviant sexual behaviors, and has victims of bestiality. The defendant recently reported he masturbated in his backyard. He admitted to knowing there was a neighbor boy next door . . . ." Defendant received a program violation for submitting incomplete homework, masturbating in his backyard, and having contact with a minor child. Although this conduct was a violation of the terms and conditions of his probation, the probation officer did not file a petition for violation of probation and recommended defendant be continued on probation.

In March 2011, defendant filed a motion for early termination of probation. Defendant claimed he had completed 46 of the 60 months of probation, completed all court ordered counseling, and paid all fees. He stated he was seeking early termination to

5

permit him to go out of state to visit family members and attend college. The motion came on for hearing on April 5, 2011, and defendant was present in court. The court continued the matter and ordered a supplemental report from probation. Defendant's birthday was also April 5, meaning he was required to update his sex offender registration. Defendant turned 23 on that day.

On April 19, 2011, the probation officer filed a petition for violation of probation, alleging defendant had not complied with his annual registration requirements. Defendant admitted to the probation violation.

### Current Conviction--Failure to Register as a Sex Offender

An information charged defendant with violating section 290.012, subdivision (a) by failing to register as a sex offender within five business days of his birthday. It was further alleged he had suffered a prior strike conviction (§ 1170.12, subds. (a)-(d)). Defendant had last registered with the police department on June 28, 2010.

On April 13, 2011, the sheriff's department advised the district attorney's office that defendant was out of compliance with his registration requirements. On April 19, 2011, a district attorney's office investigator contacted defendant at his residence and discussed the registration requirements with him. Defendant acknowledged he understood he needed to register within five days of his birth date. Defendant stated in the past, his mother has reminded him to register and this time he just forgot. Defendant pleaded guilty to failure to register and admitted he had suffered a prior strike conviction.

The probation report indicated defendant was unemployed prior to his arrest and had been receiving Supplemental Security Income (SSI) since December 2007. He had a high school diploma and had completed some college classes. Until he forgot to register in April 2011, defendant had performed satisfactorily on probation. He reported to the probation officer, paid his fines and fees in full, completed sex offender treatment, enrolled in mental health services and participated in a drug and alcohol program. The

probation officer indicated defendant was suitable for probation. But for his ineligibility due to his prior strike, probation would have been recommended. The probation officer opined it was unlikely defendant or the community would benefit from defendant's imprisonment and the more appropriate course would be continued probation with an emphasis on employment or full-time enrollment in college, along with defendant gaining more independent learning skills.

### The *Romero* Motion

Defendant filed a *Romero* motion, inviting the court to exercise its discretion to dismiss his strike conviction. Defendant also submitted an October 2011 psychological evaluation by Dr. Joseph Busey, a 2006 Tehama County Mental Health clinical assessment, and the 2007 section 1203.03 psychological evaluation by Dr. Crawford.

The April 2006 Tehama County Mental Health clinical assessment diagnosed defendant with Asperger's disorder. The clinician noted defendant was not interested in treatment to reduce his depressive symptoms and increase his social and life skills.

Dr. Busey noted defendant's memory was quite good. He scored a Verbal IQ of 98, midline normal, a Performance IQ of 119, almost in the superior range, and a Full Scale IQ of 108, almost high normal. "He spends his evenings playing chess with his cellmate, and when at home he spends almost all his time at the computer, where he plays about 20 different on-line games 'using 500 accounts on three internet sites.' One would hazard a guess that his reality is so much 'on-line' that he indeed loses track of non-virtual reality (the 'real' reality of everyday life). [¶] Because of this, one can see how he might have 'lost track' of his need to register with the police at the time of his birthday. [¶] . . . [¶] All in all, I believe he was so involved with his virtual reality that his excuse of 'forgetting' to register rings true." Dr. Busey concluded defendant was not at great risk for recidivism or a danger to society as long as he kept away from under

aged girls. He also opined that given defendant's emotional immaturity, he would not fare well in prison.

Defendant argued he was a young man who made a mistake in failing to register. He was not attempting to avoid law enforcement. He had demonstrated he could do well on probation and had successfully completed everything required of him until failing to register. He successfully completed the sex offender treatment program, learned appropriate sexual behaviors and learned how to control his urges, and paid all his fines and fees.

The prosecution countered defendant was essentially facing a 16-month term for failing to register as a sex offender while still on probation for the underlying sex offense. The underlying sexual offense had aggravating circumstances of the use of force and threats against the victim. Defendant did not successfully complete probation, and had a difficult time in the beginning of his probationary period.

After considering the briefs of the parties, the documentation in both cases, including the original probation report, the diagnostic assessment, Dr. Caruso's evaluation, the most recent probation report and arguments of counsel, the court denied the *Romero* motion. In denying the motion, the trial court indicated it was aware of its discretion to strike the prior conviction and the legal standards governing that decision. The court noted it was required to make a decision "based on the particular aspects of the current offense for which the Defendant has been convicted, as well as the previous offense, and the Defendant's own history and personal circumstances. [¶] . . . The Court is to give preponderate weight to the factors in the Three Strikes scheme, but also to the nature and circumstances . . . of the . . . present felony, as well as the previous serious or violent felony conviction, and the Defendant's background, character and prospects."

The court found the prior offense was an "egregious crime with respect to the victim and the conduct therein." At the same time, the Court also noted that defendant was a minor at the time of the offense, although he was prosecuted as an adult. "And

8

there was somewhat of a lapse between or a disparity between his age and that of the victim. [¶] The Court has also considered whether or not the previous offense was involving the use of a weapon, which it necessarily wasn't, although [the prosecutor] has correctly pointed out there were allegedly threats made with respect to the victim and that conduct. [¶] The Defendant's past criminal record only consists of the current strike that is at issue, as well as the new 290 matter. And there were no previous probation violations that were sustained. [The prosecutor] did note that there was the report from [the probation officer], but for whatever reason that report did not become a formal Petition, nor was Defendant requested to be violated, nor was he violated. Since he was on probation he has not violated, other than now. [¶] . . . [¶] The history of violence or nonviolence that can be considered by the Court doesn't show anything other than the offense that constitutes the prior strike. [¶] It is appropriate for the Court to consider the nature and circumstances of the current offense in determining whether to dismiss any strikes. . . . And whether the new offense is more serious or less serious than the previous offense; the violent or nonviolent nature of the current offense versus the previous offense. [¶] . . . [¶] This is, in essence, a technical violation, and the Defendant did technically cooperate with the police in that when he was approached by the police at the address where he had previously been registered, he simply said he forgot. I don't need to tell either of you that simply forgetting to register is not a legal defense, and the Supreme Court has already held as such. [¶] The background and character and prospects of [defendant] are such that he does apparently have some sort of support structure that is out there. [¶] The Probation Department has correctly noted that [defendant] did, through almost four years of probation, comply with every single requirement, other than, as [the prosecutor] noted, and the report of [the probation officer], which again was not pursued, he did pay all of his fines. He did report as required. He did complete the sexual offender treatment program apparently. And that is something that this Court does not necessarily find in most probationers when brought

9

before the Court. [¶] To the extent that his prospects in the future should weigh in his favor or be against him with respect to granting the motion, the Court finds it troubling that the Defendant, at his age at this point . . . [¶] . . . [¶] . . . he is almost 24. That him staying at home and playing videogames with perhaps 500 log-ins or something to that effect, really is showing that he has [not] done a lot with respect to his prospects. The report also indicates that he has taken some classes. However, he is not currently employed and receives SSI. [¶] . . . [¶] . . . The age of the Defendant is something that the Court can also consider. That in the case law generally is viewed in light of the age of the Defendant being on the advanced side with strikes being older. But in this case it would be the absolute opposite where the Defendant is younger and the strike is relatively recent. [¶] And on that note, the Court can consider the time lapse between the original strike and the current offense, also as well as the timing of the conduct, which in this instance, I assume, based on the lengthy statute of limitations or perhaps the late reporting, was somewhat farther out than you would normally see with respect to the prosecution of the matter, at least as to the original strike. [¶] The Defendant has shown in the past a willingness to undergo psychotherapy counseling, and apparently did complete, according to Probation, drug and alcohol. His family relationships show that, according to the information that was submitted in the original proceedings, as well as a motion to terminate . . ., as well as the letter that was submitted by the grandfather today, that there is some stability with respect to the family situation. [¶] What the court believes are some of the most important issues, aside from what has already been mentioned, in light of all of those factors the Court has applied in whether or not this motion will be granted, are two things. And the first--I have told counsel this in chambers--can be perceived as either a positive or a negative for the Defendant. [¶] And that is that on April 5th of last year, which was the Defendant's birthday, he was in this courtroom regarding the request for early termination of probation. And the Defendant apparently has maintained that he just simply forgot. And the Court finds that to be

10

somewhat troubling, or perhaps somewhat in his favor, depending on your perspective, in that on the day of his birthday, . . . [¶] . . . [¶] . . . April 5th he was in this courtroom regarding the early termination, which the People opposed at that time. It was then sent out to Probation for an updated report. . . . [¶] And the Court finds it, as I said, troubling that the Defendant would not remember his duty to register within five days of his birthday, which he had previously done, when he was here in court asking that probation be terminated. So certainly part of the terms and conditions of his probation, and as required by law, he had to register within five days. And how the Defendant didn't know that or forgot that at the time is an issue. [¶] The other issue is with regard to the Defendant's statement as indicated in the Probation Report that he knew he was supposed to update his sex offender registration every year, and he said that his mother had reminded him in the past to do it, and that he just forgot to do it. And since this incident he said there were more people that will try to help him remember to take care of it in the future. That indicates to the Court, at least to some extent, as was noted by Dr. Busey, in the original CDC report and the 90-day diagnostic, as well as the Probation Report, that the Defendant continues to maintain an immaturity about him wherein he has to take responsibility for his actions. And that is something that again can be considered as cutting both ways, both positive and negative. [¶] . . . The Probation Report adequately reflects that the factors in mitigation far outweigh those in aggravation under these circumstances. [¶] And one of the last things, although not absolutely inclusive, that the Court can and did consider is that the sentence must be proportional to the crime. . . . Specifically a Defendant's sentence is a relevant consideration when deciding to strike a prior conviction. In fact it is the overarching consideration, because the underlying purpose of striking a prior conviction allegation is the avoidance of an unjust sentence.

11

And therefore a trial judge, when applying the factors enunciated in *Romero* and *Williams*[2], may find adequate justification for striking one or more prior conviction allegations, and may deem appropriate the sentence that results from that strike only as to some counts versus others. [¶] . . . [¶] . . . And under the facts and circumstances, again the Court has looked at all of those facts and circumstances as applied to all of the considerations that the Court has made. [¶] And the problem for [defendant] is that [defendant] was originally given probation . . . on a very serious offense with very serious consequences, not only to [defendant] if he did not successfully complete probation, but also to the victim in this matter. And certainly the Court, in considering what are very difficult circumstances for everyone involved in this case . . . [defendant] simply has not taken responsibility for his actions at this point. [¶] He did successfully complete probation for four years. But one of the most important things that he had to do was clearly the registration under 290. And unfortunately [defendant], at age 23, is putting his responsibility in this matter, when he was on a very short leash, for lack of a better term, on a very serious offense . . ., in the hands of someone such as his mother or other family members. And in light of him not being able to take responsibility for his actions, the Court certainly understands Dr. Busey's position, as well as Probation, but nonetheless, the Court is going to deny the *Romero* motion."

The trial court sentenced defendant to the low term of six years for the continuous sexual abuse of a child and a consecutive eight-month term for the failure to update his registration, doubled to 16 months, due to the strike; an aggregate term of seven years four months. Thus, the denial of defendant's *Romero* motion resulted in an additional eight months.

---

[2] *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*).

## DISCUSSION

## I. Applicable Law

Section 1385 gives the trial court authority, on its own motion or upon application of the prosecution, "and in furtherance of justice," to order an action dismissed. (§ 1385, subd. (a).) In *Romero*, the California Supreme Court held a trial court may utilize section 1385 to strike or vacate a prior strike for purposes of sentencing under the "Three Strikes" law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero, supra*, 13 Cal.4th at p. 504.) Likewise, a trial court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

" '[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable

13

reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, *supra*, 33 Cal.4th at p. 377.) The circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be extraordinary. (*Carmony, supra*, 33 Cal.4th at p. 378.)

In deciding whether it is in the interest of justice to strike allegations, the trial court "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra,* 17 Cal.4th at p. 161.)

## II. Analysis

Defendant contends the trial court abused its discretion in failing to strike his prior strike conviction, because substantial evidence does not support the conclusion that "viewed against the backdrop of his background and social history" a three strikes term was justified. He also argues the record does not support the trial court's finding that defendant's "relying on others for help in remembering the registration requirement, which was a key factor in the trial court's decision to deny the *Romero* motion, amounts to a failure to assume responsibility for himself and his actions." We disagree.

Dismissal of a strike is a departure from the sentencing norm. Therefore, in reviewing a trial court's refusal to dismiss strike allegations, we will not reverse for abuse of discretion unless the defendant shows the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony, supra*, 33 Cal.4th at p. 377.) Reversal is justified where the trial court was unaware of its discretion to strike a prior strike, or refused to do so at least in part for impermissible reasons. (*Id*. at p. 378.)

14

But where the trial court, aware of its discretion, " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]." (*Ibid.*) This record demonstrates unequivocally that the court considered the relevant factors and did not abuse its discretion when it refused to dismiss defendant's strike allegation.

Here, when the trial court began the hearing it stated it was aware of its discretion to strike the prior conviction and delineated the legal standards governing that decision. The court considered the briefing of the parties, the mental health evaluations, the original probation report and an updated probation report, a letter from defendant's grandfather, and argument from counsel.

The court expressly considered the *Williams* factors and cited them in reaching its conclusion. Moreover, the record supports the trial court's assessment of defendant's background, character, and prospects.

It is true that defendant was young when he committed the offense, a minor in fact. He had no prior criminal record and there were no other probation violations filed in this case. His current offense was a technical violation of the registration requirement, defendant cooperated with police and was found at the location where he had previously registered. Defendant had completed four years of probation, paid all his fines, reported as required, and completed his sexual offender treatment. Defendant had a support structure and a stable family; he was young and the strike was relatively recent; he had demonstrated a willingness to undergo psychotherapy; and had completed drug and alcohol counseling.

On the other hand, defendant's prior offense was egregious. Given his mother's position as the babysitter for the victim and her siblings, and given the age difference between the victim and defendant, the victim was particularly vulnerable to defendant. Defendant was 16 years old at the time of the offense, and his victim was only nine.

15

Defendant used force and psychological coercion and intimidation, threatening he would molest the victim's sister. This threat was particularly potent, given defendant's brother's previous molestation of that sister. On probation, it was discovered defendant had additional victims and had engaged in inappropriate sexual behavior while on probation. Defendant did not successfully complete his probationary term. With job training, defendant was employable, but was not currently employed. Nor did he appear to be seeking employment or training, despite the fact that employment was a condition of his probation. Rather, instead of seeking employment or training, he spent a significant amount of time playing video games. Each evaluation noted defendant spent an inordinate amount of time playing video games, which in turn restricted his peer relationships and social skills. This lack of social skills and interaction likely contributed to the commission of the offense. Furthermore, Dr. Busey reported it was not defendant's inability to remember that caused him to forget to register; in fact, his memory and IQ were quite good. Rather, it was defendant's immersion in online reality that caused him to "lose track" of the need to register. The reports indicated defendant was immature. By his own statements, he relied on others to remind him to fulfill his obligation to register. This fact, combined with the reports of Dr. Busey, the probation report and the CDC diagnostic evaluation, support the inference defendant was immature and was not taking responsibility for his own actions.

Defendant relies on *People v. Cluff* (2001) 87 Cal.App.4th 991 (*Cluff*), and claims he is a more sympathetic figure than *Cluff* was, to support his claim that his *Romero* motion should have been granted. *Cluff* does not stand for the proposition that the "technical" nature of a violation of the registration laws brings a person outside the spirit of the three strikes law. Indeed, in *Carmony*, our Supreme Court upheld the denial of a *Romero* motion for a registrant whose current offense was failing to update a registration, but who, like defendant, had not changed his residence since his last registration. (*Carmony, supra*, 33 Cal.4th at pp. 379-380.) There, the court emphasized the

16

narrowness of *Cluff*: "Unlike the trial court in *Cluff*, which relied on a factor--the defendant's intentional obfuscation of his whereabouts--allegedly unsupported by the record, the trial court in this case refused to strike defendant's prior convictions based on factors allowed under the law and fully supported by the record." (*Carmony, supra*, at p. 379.) As in *Carmony* and unlike *Cluff*, in this case the factors relied upon by the trial court were proper under the law and amply supported by the record.

The People also note the refusal to strike defendant's prior strike conviction increased defendant's sentence by only eight months. Defendant claims the fact that his "sentence was only increased by an extra 8 months on the failure to register count due to the denial of the *Romero* motion . . . is of no moment." Defendant is wrong.

"[A] defendant's sentence is . . . a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences." (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) In *Cluff*, the refusal to dismiss a prior strike conviction resulted in a sentence of 25 years to life for a failure to comply with the sex offender registration. By contrast, here, the refusal to dismiss a prior strike conviction resulted in an additional sentence of eight months for the failure to register. It is one thing to say that a sentence of 25 years to life is not in furtherance of justice and results in an unjust sentence. It is quite another to say a sentence of eight months is an unjust sentence.

Defendant has not established that the trial court's decision was so irrational or arbitrary that no reasonable person could agree with it. (*Carmony, supra*, 33 Cal.4th at p. 377.) Indeed, in light of the oral and documentary evidence and argument presented, we conclude the trial court's decision was reasonable. Defendant does not fall outside the spirit of the three strikes law. The trial court did not abuse its discretion. The *Romero* motion was appropriately denied.

17

## DISPOSITION

The judgment is affirmed.

     MURRAY     , J.

We concur:

     RAYE     , P. J.

     MAURO     , J.