[No. A086125. First. Dist., Div. Three. Mar. 14, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN ROSS CLUFF, Defendant and Appellant.

[No. A090342. First. Dist., Div. Three. Mar. 14, 2001.]

In re ALAN ROSS CLUFF on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

*Under California Rules of Court, rules 976(b) and 976.1, only the introductory statement, part I, subpart G of part II, and part III are certified for publication.

## COUNSEL

Richard Such, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PARRILLI, J.**—In a court trial, Alan Ross Cluff was convicted of failing to comply with the sexual offender registration scheme. (Pen. Code, § 290.)[1] In addition, the court found Cluff had suffered three prior "strikes" under the "Three Strikes" law and had served a prior prison term. Cluff's motion to strike the prior conviction allegations was denied, and "with a heavy heart" the court sentenced him to 25 years to life in prison.

This case involves the most technical violation of the section 290 registration requirement we have seen. Cluff registered with the chief of police in the jurisdiction where he was living, and continuously resided at the same address until his arrest on the current charge. Thus, he did not violate the requirement that he register after moving to a city or changing his "residence or location" within the city. (§ 290, subd. (a)(1)(A).) Instead, Cluff failed to comply with the separate requirement that he annually "update" his registration within five days of his birthday. (§ 290, subd. (a)(1)(D).) The Legislature added an annual registration requirement in 1995, five years after Cluff was released from prison. It was Cluff's failure to annually confirm that his address had not changed that triggered his liability under section 290 and led to his 25-year-to-life prison term.

Cluff raises a total of 10 issues in this appeal and a consolidated petition for writ of habeas corpus. We reject the bulk of his arguments and affirm his conviction.

However, we conclude the trial court abused its discretion when it denied Cluff's motion to strike one or more of his priors. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*).) Therefore, we vacate the sentence and remand for a new *Romero* hearing.

I

### BACKGROUND

The registration requirement in this case stemmed from Cluff's convictions on nine counts of lewd and lascivious conduct with a child under the age of 14. Cluff was sentenced to a total term of nine years for those offenses. He was released from prison in 1990. At that time, prison officials informed him of his lifetime obligation to register as a sex offender. Cluff registered a number of times after changing his residence over the next five

[1]Subsequent statutory references are to the Penal Code.

years. In October 1995, Cluff moved to the City of San Mateo. On October 18, 1995, he went to the San Mateo Police Department and registered as section 290 requires. The registering officers (Jacobson and Pierucci) interviewed Cluff, took his photograph and fingerprints, and listed his address, occupation, and other identifying information on the registration documents. Cluff gave his address as 1408 South Norfolk Street in San Mateo.

When Cluff registered in October 1995, Officer Jacobson gave him a form explaining the requirements for registration. Cluff signed the form, which specifically advised him that he was required to update his registration annually within (at that time) 10 days of his birthday. This was a new requirement that came into effect on January 1, 1995. It was not highlighted on the form, and Cluff did not receive a copy of the form. However, it was Officer Jacobson's habit to orally summarize the registration requirements, including the requirement that the offender update his registration annually.[2]

Officer Jacobson gave Cluff a temporary "compliance receipt" that had a summary of the section 290 registration law printed on the back. However, the summary did *not* include the new requirement that the offender update his registration annually. Similarly, Cluff's fingerprint card prepared at the time of the October 1995 registration had a summary of the registration requirements printed on the back that did not mention the annual updating requirement.

Except for a four-month period in 1996 when Cluff was helping his sister relocate to Utah after her husband died, he continued to live as a renter at 1408 South Norfolk Street in San Mateo. While he was in Utah, Cluff made rent payments to keep his room in his landlord's house.

In October 1997, Sergeant Callagy of the San Mateo Police Department learned that Cluff had not updated his registration during the period around his birthday (July 29) in 1996 and 1997. On October 23, 1997, Callagy went to 1408 South Norfolk Street and met with Cluff's landlord. The landlord confirmed that Cluff still lived at that address, and said he would have Cluff call Callagy when he returned. Cluff called Callagy the next day, and offered to come in immediately. Callagy told Cluff he needed to come to the police station to register, but that he need not come in that day. Cluff asked whether he would be arrested. Callagy said no. They made an appointment for October 27th.

---

[2]Cluff offered evidence that the San Mateo Police Department had changed its registration practices since 1995. Currently, the department uses a form that sets out the individual requirements for registration and requires the offender to separately sign or initial each separate requirement.

In 1996, the Legislature shortened the updating period from within 10 to within 5 days of the offender's birthday.

When Cluff arrived at the police station for his appointment on October 27, Sergeant Callagy immediately arrested him for violating section 290. After Callagy advised Cluff of his *Miranda* rights, he asked Cluff if he knew he had to register annually with the police department. Cluff said he "understood his requirements to register." When Callagy asked him why he did not register, Cluff had no answer. When Cluff asked if he could register that day (Oct. 27), Callagy said he could not, and would have to make a separate appointment to come back to update his registration. To Callagy's knowledge, Cluff had not done so by the time of trial in December 1998, although he had registered when he moved to Patterson, California sometime in the first part of 1998.

The district attorney charged Cluff in a one-count information as follows: "On or about 10/23/1997, Alan Ross Cluff being a person required to register as a sex offender having been previously convicted, of PC section 288A . . . , did fail to register within the time limits provided, in violation of Penal Code section 290(a)(1), a felony."

The prosecution argued that Cluff violated section 290 by failing to comply with the annual "birthday" registration requirement. As the prosecutor put it, "[t]he issue is whether he knew that he had to register within the time limits annually on his birthday."

The defense argued that Cluff's "failure to re-register on his birthday was a negligent violation of the statute due to mistake of fact."

The court rendered its verdict in December 1998, observing that the evidence was insufficient to determine whether Cluff's failure to register was "negligent as opposed to intentional." However, the court ruled that Cluff received sufficient notice of the annual registration requirement to satisfy any due process concerns. The court found him guilty as charged.

At the sentencing hearing in February 1999, the court considered the probation officer's report, the report of a court-appointed psychotherapist, and the arguments of counsel, before denying Cluff's *Romero* motion and sentencing him to a term of 25 years to life.[3]

II

DISCUSSION

Cluff raises seven issues in this appeal and three additional issues in a consolidated habeas corpus petition.

---

[3]Both reports considered at the February 1999 sentencing had been prepared in August 1998.

A.-F.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### G.  *Denial of the Motion to Strike.*

█  Although Cluff casts his argument as a challenge to the constitutionality of his punishment, he actually argues two related points: (1) his sentence is unconstitutional because it is so disproportionate to his conduct that it "shocks the conscience and offends fundamental notions of human dignity" (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921]); and (2) the court abused its discretion by not recognizing this, and failing to strike one or more of the prior convictions.

We note Cluff received his 25-year-to-life term not for the current offense alone, but because he had committed prior serious or violent felonies. (*People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630 [47 Cal.Rptr.2d 769].) He is being punished for his recidivism, not merely for the current offense. █  Other courts have determined that, as a general matter, the punishment imposed by California's Three Strikes law is not so disproportionate that it violates the prohibition against cruel or unusual punishment. (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1512-1517 [84 Cal.Rptr.2d 638] [citing cases].) Thus, we need not revisit that issue.

█  However, we conclude the court abused its discretion at the *Romero* hearing, because substantial evidence does not support the critical inference the court relied on in denying the motion to strike. Since we will vacate the sentence, we need not consider Cluff's arguments that the punishment is cruel and unusual.

### 1.  *Governing Law*

█  The Supreme Court has set out guidelines for lower courts to apply in deciding whether to strike a prior Three Strikes conviction under *Romero*. The touchstone for that determination is whether "in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 [69 Cal.Rptr.2d 917, 948 P.2d 429]; *People v. Garcia* (1999) 20 Cal.4th 490, 498 [85 Cal.Rptr.2d 280,

---

*See footnote, *ante*, page 991.

976 P.2d 831]; *People v. Stone* (1999) 75 Cal.App.4th 707, 717 [89 Cal.Rptr.2d 401].)

Our Supreme Court has also made it clear that appellate review of a trial court's decision on a *Romero* motion is not de novo. " '[T]he superior court's order [i]s subject to review for *abuse of discretion.* This standard is *deferential.* [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question "*falls outside the bounds of reason*" under the applicable law and the relevant facts [citations].' " (*People v. Garcia, supra,* 20 Cal.4th at p. 503, italics in original, quoting *People v. Williams, supra,* 17 Cal.4th at p. 162.)

Generally, sound discretion "is compatible only with decisions 'controlled by sound principles of law, . . . free from partiality, not swayed by sympathy or warped by prejudice . . . .' [Citation.]" (*People v. Bolton* (1979) 23 Cal.3d 208, 216 [152 Cal.Rptr. 141, 589 P.2d 396].) " '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977 [60 Cal.Rptr.2d 93, 928 P.2d 1171]; see also *People v. Stone, supra,* 75 Cal.App.4th 707, 716; *People v. Myers* (1999) 69 Cal.App.4th 305, 309 [81 Cal.Rptr.2d 564].)

A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence. As the court noted in *Stack v. Stack* (1961) 189 Cal.App.2d 357, 368 [11 Cal.Rptr. 177], "[i]t would seem obvious that, if there were no evidence to support the decision, there would be an abuse of discretion." (Italics omitted.) In *Johns v. City of Los Angeles* (1978) 78 Cal.App.3d 983 [144 Cal.Rptr. 629], the Second District found the trial court had abused its discretion in ordering a new trial because substantial evidence did not support the stated basis for the decision (juror bias). (*Id.* at pp. 990, 991-998; see also *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1065-1066 [24 Cal.Rptr.2d 654] [discussing relationship between substantial evidence and abuse of discretion standards]; *People v. Benevides* (1998) 64 Cal.App.4th 728, 735, fn. 7 [75 Cal.Rptr.2d 388] [court may not decline to exercise its authority to strike prior convictions under *Romero* for "improper reasons"].)

2. *Facts Relevant to the Motion to Strike*

■ Cluff was born in 1951 and was 48 years old at the time of sentencing. His early criminal history consists of a petty theft in 1970, two convictions for indecent exposure in 1972, and a third conviction for indecent exposure in 1973. In all three indecent exposure offenses Cluff exposed his penis to children in public areas.

In June 1984, a jury convicted Cluff of the felony counts of child molestation that underlie the Three Strikes enhancement in this case. With respect to those offenses, the probation report states that while Cluff was residing with his fiancée and two boys (aged five and eight), he frequently molested the boys by fondling their penises and orally copulating the younger boy. In a separate incident in the summer of 1983, Cluff molested the six-year-old son of a visiting friend by asking him to play "milk the cow." When the boy refused, Cluff pulled the boy's pants down and fondled the boy's penis. Cluff also molested a seven-year-old boy in a similar manner. Cluff received a nine-year prison sentence for these offenses. He was paroled in April 1990. He was not arrested or accused of any further offense until October 1997, when the police arrested him for the registration violation at issue in this case. The court found Cluff guilty in December 1998, and sentenced him in February 1999.

With respect to Cluff's "prospects," he regularly worked as an electrician from 1995 to 1998 and, immediately before he was sent to prison, worked as a warehouse and maintenance person with a firm in Patterson, California. The court-appointed psychologist who examined Cluff in July and August 1998, Dr. Bruce Bess, concluded that Cluff had not reoffended since his release from prison, and would probably not reoffend "[w]ith probation supervision and participation in a treatment program."

With respect to the circumstances of the current offense, Dr. Bess stated in recommending probation that "[i]t is not clear why [Cluff] failed to renew his registration, but, to my knowledge, there is no indication that he was attempting to conceal his whereabouts." The probation officer took a dimmer view of the matter, noting that Cluff continued to maintain he was never notified of his duty to register, despite the documents he received informing him of that duty. The probation officer also noted: "On July 31, 1998, the defendant completed an application for enrollment through the OICW Program. He furnished a San Mateo address. This was after [he] register[ed] in Patterson, California. In his application, he reported no prior criminal convictions." The probation officer further observed that Cluff "did not mention having worked for a carnival as reported by his living companions. When confronted during the interview, [Cluff] reported that he did that type of work on a seasonal basis and was employed as an electrician."

Both Dr. Bess's report and the probation report were considered by the court on August 20, 1998, at a hearing on the prosecution's motion to increase Cluff's bail. The doctor's report was dated August 19; the probation report was dated August 20. The probation report stated that Cluff had been working for a firm in Patterson for "approximately five months." Anthony

Costa, Cluff's landlord, testified at trial in December 1998 that from the previous May through August, Cluff (and Costa) had lived part of the time with Costa's daughter in Patterson. Costa and Cluff travelled back and forth between San Mateo and Patterson, where Cluff worked for a business owned by Costa's daughter. At the bail hearing in August, Cluff's bail was increased and he was taken into custody, where he remained until sentencing.

The probation report was resubmitted to the court without change for the sentencing hearing in February 1999. At the hearing, the prosecutor contended Cluff was a pedophile who took work at a carnival and left the state without notifying anyone. Arguing beyond the evidence, the prosecutor asserted that Cluff lived with a family with three young boys.[11] The prosecutor suggested that Cluff may have reoffended but simply not been caught. The trial court rejected the prosecutor's insinuations, stating that it would be "improper for the court to speculate about crimes that may have occurred." However, the court also took a jaundiced view of Cluff's current offense. In denying Cluff's motion to strike his priors, the court stated:

"Well, I think from the court's p[er]spective, the circumstances underlying the offense at hand are important. [¶] And, in fact, it's very important as far as the consideration of the *Romero* motion. My read of Dr. Bess' report is that he makes a recommendation, there were some important factors he was aware about from [the] People's brief and some of the evidence that was introduced during the course of the trial regarding the defendant's conduct in this case, and he puts a very rosy p[er]spective on his alleged innocence in failing to register.

"And I don't buy that based on what I have heard about the conduct. It is not as simple as an innocent mistake. It's not as simple as he didn't know about his requirement.

"There are disturbing factors underlying this case that I find alarming, in the court's view, which bear on the *Romero* issue that [defense counsel] has raised.

"The registration in 1998 in Patterson when there is documentation in the record that suggests misrepresentation as [to] his criminal background, his representation as to his place of residence.

---

[11]The only indication in the record that Cluff was living in a home with children is on a Post-it note affixed to page 2 of Dr. Bess's report, bearing the notation "living in Patterson w/ Costa family w/young children male children." The note is not dated, its source is not identified, and we cannot tell when or by whom it was attached. Clearly, an anonymous handwritten note of indeterminate origin appended to a formal written report is not evidence.

"Yes, there is a contorted set of facts by which there can be some explanation of that, but frankly it's not compelling to me, not convincing me.

"And for those reasons, I disagree that this is a simple technical 290 violation. It's a violation that the defendant was advised of; that the defendant knew about, and his background is what it is.

"You are quite right, [defense counsel], there is no indication or evidence of reoffense. . . . That's not what's involved. He hasn't fled the jurisdiction of the court. Nevertheless, he has certainly, in the court's view, [clouded] the waters in terms of his residence and where he lives and where he can be found.

"The final and most significant portion of which was his failing to register as required by the code. Given the totality of factors, and I have given this a great deal of thought, Dr. Bess' report is important as well, I do not think that there [is] sufficient justification presented to me to strike the priors contained in the information regardless of Dr. Bess' [recommendation]. I am satisfied that based on what I have heard about this case, that there has been obfuscation on the part of Mr. Cluff that goes beyond the technical 290 violation.

"And given that circumstance, and the totality of the circumstances in the case, which cannot be ignored in the *Romero* motion, I am going to deny your request to strike the prior convictions under *Romero* for the reasons that I stated."

### 3. *Analysis*

This record strongly suggests that Cluff committed a "technical" violation of section 290, without intent to deceive or evade law enforcement. Though he failed to annually update his registration in San Mateo, Cluff consistently registered in the jurisdictions where he resided.[12] The annual updating requirement was added to the Penal Code five years after Cluff left prison, the new requirement was omitted from the only document he was allowed to keep in 1995 when he registered in San Mateo, and the updating requirement was itself amended in 1996. When the police looked for Cluff, he was living at his registered address. After the police contacted Cluff, he immediately telephoned them and promptly came to the station.

---

[12]Sergeant Callagy testified that Cluff had registered five times with various law enforcement agencies between his release from prison in 1990 and his 1995 registration in San Mateo.

Thus, Cluff's *Romero* motion did not lack substantial grounds on which the trial court might have exercised its discretion to strike one or more strikes. Cluff's failure to confirm his address, by itself, posed no danger to society. Cluff was exactly where he said he would be when he registered in 1995, and the police were able to quickly find him. The purpose of the registration statute was not undermined by his failure to annually update his registration. There was no indication he had reoffended since he left prison in 1990, and Dr. Bess believed that "with probation supervision and participation in a treatment program" Cluff would not reoffend.

However, the court viewed Cluff with suspicion, believing he had "[clouded] the waters in terms of his residence and where he lives and where he can be found." Apparently, the court was referring to the fact that Cluff had left the state for four months to stay with his recently widowed sister in Utah, without reporting this to the authorities. Similarly, the court seemed to give considerable weight to Cluff's misstatements in July 1998 regarding his residence and criminal record on his application for a job training program. Viewing the evidence as a whole, the court concluded "there has been obfuscation on the part of Mr. Cluff that goes beyond the technical 290 violation." The evidence in the record does not support this critical finding.

■ To be sufficient, evidence must be "substantial." (See, e.g., *People v. Morris* (1988) 46 Cal.3d 1, 19 [249 Cal.Rptr. 119, 756 P.2d 843], disapproved on an unrelated point in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5 [37 Cal.Rptr.2d 446, 887 P.2d 527].) Evidence is substantial only if it " 'reasonably inspires confidence and is of "solid value." ' " (*People v. Morris, supra*, at p. 19.) By definition, "substantial evidence" requires *evidence* and not mere speculation. In any given case, one "may *speculate* about any number of scenarios that may have occurred . . . . A reasonable inference, however, 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.' " (*Id.* at p. 21, italics in original; see also *People v. Tran* (1996) 47 Cal.App.4th 759, 772 [54 Cal.Rptr.2d 905].)

■ In this case, the trial court's analysis became disconnected from the evidence and entered the realm of imagination, speculation, supposition, and guesswork. At trial, the court had refrained from determining whether Cluff's registration violation was negligent or intentional. At the sentencing hearing, however, the court resolved its earlier doubts and concluded that Cluff had not inadvertently failed to annually update his registration, but had done so with knowledge of the requirement in order to "obfuscate" his true

residence. We accept the trial court's finding that the violation was intentional (as we would have if the court had made that finding at trial); the evidence that Cluff had notice of the new requirement supports that determination. However, none of the facts before the court—whether considered separately or together—support the inference that Cluff failed to update his registration in order to obfuscate his residence or escape the reach of law enforcement.

Cluff's four-month visit with his sister in Utah does not indicate he was obfuscating his true residence in California. The term "residence" in section 290 connotes " 'more than passing through or presence for a limited visit[].' " (*People v. McCleod* (1997) 55 Cal.App.4th 1205, 1218 [64 Cal.Rptr.2d 545].) The People have not contended that the Utah interlude amounted to a change of residence. Had they believed so, they could have charged Cluff under section 290, subdivision (f) with failing to inform the police of a change of residence. The fact that no such charge was made is an implicit concession that Cluff did not change his residence.

Cluff's misrepresentations on a job training application seven months after his arrest also provide no grounds to infer that he intended to obfuscate his true residence. There is no evidence that Cluff ever changed his residence without reregistering. When the police looked for him, they found him at his registered address: 1408 South Norfolk Street in San Mateo. When Cluff gave a San Mateo address on his job training application in July 1998, he had already registered pursuant to section 290 in Patterson (therefore, the police could also have found him in that location). (See § 290, subd. (a)(1)(B) [person with more than one residence must register at each].) Cluff omitted his criminal record, and apparently his current employment, on the application. However, the deceptive statements on the application prove only that he was willing to bend the truth to get into a job training program. Willingness to lie for a chance of employment may be an unfortunate trait possessed by many people in substantially less challenging circumstances than Cluff, but it does not support an inference that the applicant purposefully failed to update his sex offender registration in order to conceal his true residence. Cluff's address was on record with the appropriate authorities everywhere he resided. Under these circumstances, his statements on the job training application simply do not support the inference drawn by the trial court.

Similarly, Cluff's failure to report his employment with a carnival on a seasonal basis does not suggest obfuscation of his true residence. There is no evidence in the record indicating that Cluff traveled with the carnival, or, if he did, how long or how often he was gone. Thus, any inference of wrongdoing based on this evidence was unfounded.

Finally, the trial court found it "most significant" that Cluff had failed to annually update his registration as required by section 290. This is no more than a finding that he was guilty of the crime for which he was convicted. We do not see how the mere fact of Cluff's guilt indicates he failed to annually update his registration in order to obfuscate his true residence.

We conclude that the evidence in the record does not support the inference of obfuscation that was central to the trial court's ruling. Therefore, the court abused its discretion when it denied Cluff's *Romero* motion.

In light of our conclusion, we need not and do not resolve the claim that application of the Three Strikes law in this case would be cruel and unusual punishment. However, for the guidance of the trial court on remand, we note that the severe penalty imposed on Cluff appears disproportionate by any measure. The nature of Cluff's current offense did not demonstrate recidivist tendencies toward child molestation. While there is no requirement that a third strike be a serious or violent felony, neither the Legislature nor the voters intended the Three Strikes law to be used as a nuisance statute to rid society forever of persons who fail to meet technical requirements to confirm an accurate registration.

On remand, the trial court should keep in mind that "a decision to strike a prior is to be an individualized one based on the particular aspects of the current offenses for which the defendant has been convicted and on the defendant's own history and personal circumstances. This approach allows the court to perform its obligation to tailor a given sentence to suit the individual defendant. But the court must also be mindful of the sentencing scheme within which it exercises its authority. In deciding to strike a prior, a sentencing court is concluding that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." (*People v. McGlothin* (1998) 67 Cal.App.4th 468, 474 [79 Cal.Rptr.2d 83].)

On this record, there are strong arguments that Cluff should be treated as though he fell outside the Three Strikes scheme.[13] In addition to the factors discussed above, we note that none of the circumstances in aggravation listed in the California Rules of Court appear to apply here (Cal. Rules of Court, rule 4.421), while some circumstances in mitigation may apply (see, e.g., Cal Rules of Court, rule 4.423(a)(1), (6), (7), (b)(6)). The court should consider all of these factors in exercising its discretion to strike one or more of the prior convictions.

---

[13]Both sides, of course, are free to present additional relevant, admissible evidence when the matter returns to the trial court for resentencing.

H.  *Habeas Corpus Issues.**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## III

### DISPOSITION

The petition for writ of habeas corpus is denied. The sentence is vacated and the matter is remanded to the trial court to conduct a new *Romero* hearing. In all other respects, the judgment is affirmed.

Corrigan, Acting P. J., and Walker, J., concurred.

---

*See footnote, *ante*, page 991.