Filed 1/3/23  P. v. Rodriguez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B317732 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA447872) |
| v. | |
| GILBERT ANTHONY RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Renee F. Korn, Judge.  Affirmed.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted appellant Gilbert Rodriguez of one count of second degree murder (Pen. Code, § 187, subd. (a))[1], and also found that he personally and intentionally discharged a firearm while committing the offense, causing great bodily injury or death (§ 12022.53, subd. (d)). In his first appeal, we affirmed appellant's conviction, but remanded the case so that the trial court could exercise its discretion to strike or retain the firearm sentencing enhancement. On remand, following briefing and argument by the parties, the trial court declined to strike the enhancement.

In this appeal, appellant contends the trial court abused its discretion by refusing to strike the firearm enhancement or impose a lesser enhancement. He argues that the court's ruling was based on a misunderstanding of material facts. We find no abuse of discretion in appellant's sentencing and therefore affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Trial and First Appeal

The underlying facts are discussed in detail in our prior opinion, *People v. Rodriguez* (June 4, 2019, B287250) (nonpub. opn.). We summarize them here as relevant to the instant appeal.

### A. Prosecution Evidence

Appellant's uncle, Antonio Rodriguez, operated a business selling second-hand clothing and merchandise. Several of Rodriguez's employees, including victim Gustavo Chamorro and witnesses Oscar Mata and Doris Mazariegos, lived in makeshift shelters in the backyard of Rodriguez's home. Several other

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

individuals also lived in the home, including appellant, witness Henry Melendez, and Rodriguez's girlfriend, Marilin Presiado.

On June 22, 2016, Mata, Mazariegos, Melendez, Presiado, and appellant were at the Rodriguez home sorting clothes and doing other work. Appellant had been drinking much of the day. Mazariegos testified that he seemed "intoxicated" and looked "kind of mad." Presiado told police appellant was "talking shit about" Chamorro "the whole day," "[s]aying he was scum, a thief," but denied saying those things at trial. Presiado left the property a little before 6:00 p.m. to pick up a pizza.

Chamorro arrived home as Presiado was leaving. Mazariegos heard Chamorro arguing with appellant. Several witnesses heard Chamorro refuse appellant's loud demands that he call Rodriguez or lend appellant his cellphone. Melendez heard Chamorro say that appellant needed to learn to calm down and respect his elders; Mazariegos heard Chamorro tell appellant to leave him alone. Mazariegos and Melendez also heard Chamorro use the Spanish word "machetasos." Mazariegos understood the word to mean something like "to swing a machete." Melendez understood it to mean "that [Chamorro] wanted to kill [appellant], to cut him up in small pieces."

Melendez alone testified that Chamorro was holding a machete during the dispute. Melendez testified that Chamorro was seated, with a beer in one hand and the machete in the other, hanging by his side near the ground. Melendez demonstrated for the jury a pumping motion he saw Chamorro make with the machete. He also described Chamorro as "like desperate to stand up and get [appellant] out using the machete." Melendez admitted on cross-examination that he had not told the police that Chamorro was holding a weapon.

After appellant and Chamorro exchanged words, appellant approached Melendez and asked him, "Did you see the machete? Did you hear something about the machete?" Melendez told appellant that he did not want to get involved.

Appellant went into the basement and emerged about a minute later with a rifle, which he pointed at Chamorro. Mata and Melendez both heard a shot. Melendez testified that he heard the first shot hit an awning above Chamorro's head and heard someone say, "Oops, I missed." At trial he claimed he did not know who said those words, but he admitted that he told police that appellant said them.

Mazariegos, Mata, and Melendez all testified that they then heard five or six shots. Chamorro fell to the floor. Appellant began running around the house, asking residents for their cell phones.

Mata and Presiado unsuscessfully attempted to resuscitate Chamorro. Presiado called Rodriguez and the police. Appellant left the property on foot when sirens could be heard approaching.

Los Angeles Police Department (LAPD) officers arrived on the scene around 6:05 p.m. Officers found Chamorro lying dead on the ground in the backyard, four spent .22-caliber casings on the ground near his body, a .22-caliber Marlin rifle with a scope propped up near the outside door to the bathroom, and two additional shell casings in the basement. Ballistics testing revealed that the casings had been fired from the Marlin rifle. Officers searched the entire backyard and did not find any knives, "bladed objects," or "makeshift weapons." Appellant was apprehended down the street from the house.

During interviews with the police, excerpts of which were played for the jury and admitted into evidence, Melendez said

4

twice that he heard appellant say "Oops, I missed." Presiado told police that appellant had been "talking shit about" Chamorro all day, and told her that he shot Chamorro "because he deserved it."

A forensic pathologist testified that Chamorro had been shot seven times in the head and torso; the wounds to his head were fatal. Due to a lack of soot or stippling in the wounds, the pathologist concluded that the shots were fired from more than three feet away.

B. *Defense Evidence*

Christian Martinez, another employee of Rodriguez's, testified that he was asked to clean up Chamorro's belongings at his residence. Martinez found a 14-inch machete among the belongings, which he moved to a storage unit. He gave the machete to a defense investigator in August 2016, and it was ultimately turned over to the LAPD.

A "presumptive screening" of samples of Chamorro's blood tested positive for methamphetamine. The criminalist who performed the screening testified that she was not able to draw any conclusions about the amount of methamphetamine in Chamorro's system or any effect it may have had on his behavior.

C. *Conviction and Appeal*

The jury found appellant guilty of second degree murder (§ 187, subd. (a)). The jury also found true the enhancement allegations that appellant personally and intentionally discharged a firearm and caused Chamorro's death within the meaning of section 12022.53, subdivisions (b), (c), and (d).[2]

---

[2] Section 12022.53, subdivision (b) imposes a 10-year enhancement for personal use of a firearm during the commission of a specified felony. Subdivision (c) imposes a 20-year

Appellant admitted several prior conviction allegations, which the trial court struck in the interests of justice. The court sentenced appellant to a term of 15 years to life on the murder count and a consecutive term of 25 years to life on the section 12022.53, subdivision (d) enhancement. The court imposed and stayed sentences on the section 12022.53, subdivisions (b) and (c) enhancements.

Appellant appealed, arguing that the trial court erroneously admitted evidence at trial. We disagreed and affirmed his conviction. In rejecting appellant's claim that the court committed prejudicial error by admitting certain evidence, we noted, "the evidence against defendant was very strong, and the evidence supporting his theory of self-defense was relatively weak at best. . . . What is clear is that the jury had before it evidence that undermined defendant's self-defense theory. Defense counsel even reminded the jury during closing argument that there was no evidence that Chamorro swung the machete, held it in the air, or charged at defendant, and that Chamorro 'wasn't pointing it, he wasn't swinging it, he wasn't violently charging my client.'"

Appellant also contended that the case should be remanded so the trial court could exercise its new discretion under section 12022.53, subdivision (h) to strike the firearm enhancement. The Attorney General conceded this point and we agreed. Thus, we

enhancement where the person "personally and intentionally discharges a firearm." Subdivision (d) imposes an enhancement of 25 years to life where the person "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death."

remanded the case for the trial court to exercise its discretion pursuant to section 12022.53, subdivision (h) and section 1385.

## II. Remand

On remand, appellant filed a brief requesting that the court exercise its discretion to strike the section 12022.53, subdivision (d) enhancement and impose a lesser firearm enhancement under section 12022.53, subdivisions (b) or (c). He argued that the testimony at trial established that Chamorro was "holding a 'machete' in one hand and a 'beer' in the other" at the time of the shooting, and also had methamphetamine in his system. Based on this evidence, he argued that it "would be adequate punishment" to impose a lesser enhancement. He attached excerpts from the trial transcript, including testimony by Melendez that while seated, Chamorro was "holding his hand down to the ground and he was holding a machete and he said, 'I'm going to take you out hitting you with my machete out of here.'" Melendez testified that appellant was sitting on the steps to the basement at the time, and afterward appellant approached Melendez and asked if he had heard what Chamorro said about the machete.

The prosecution opposed appellant's request, arguing that he was the actual shooter, had time to "reflect on his actions and exercise restraint," but instead fired a "warning shot," then shot Chamorro multiple times, including two shots that struck Chamorro in the head, killing him. The prosecution also cited trial testimony that Chamorro was seated at the time he was shot, and that Melendez testified that Chamorro never raised the machete, swung it, stood up, or approached appellant with it.

During the re-sentencing hearing, the court stated that it had reviewed all of the material provided and considered the

7

arguments of counsel. The court recognized its discretion, and noted the three separate subdivisions of section 12022.53, including subdivision (d) for firearm "discharge resulting in great bodily injury or death." The court took judicial notice of the court file, our prior decision, the remittitur, and the record of appeal. The court declined to strike the enhancement, finding that "[t]his case involves the defendant shooting the victim Gustavo Chamorro after a heated argument where victim Chamorro did not have a weapon at that point, made no threats with any kind of weapon. [¶] The court is aware that at some point in time, he - - held a weapon in his hand - - not a firearm - - but never actually threatened or used it in any manner. [¶] During that heated argument, the defendant went inside his home, went downstairs...and retrieved a rifle. He then pointed that rifle . . . at victim Chamorro. [¶] Chamorro asked the defendant not to point the rifle at him. Instead, defendant fired a shot. The bullet struck a metal overhang . . . and defendant said, 'Oops, I missed.' Defendant then fired five additional rounds at Chamorro. Chamorro was struck four times . . ." The court concluded, "[a]fter reviewing the facts in this case, this court declines to use its discretion under 1385, and 12022.53, subsection (a) to strike or dismiss the firearm enhancement."

Appellant timely appealed.

## DISCUSSION

Appellant contends the trial court abused its discretion in refusing to strike the firearm enhancement under section 12022.53, subdivision (d). He argues that the court relied on a misunderstanding of material facts. We disagree.

8

## I. Governing Principles

Section 12022.53, subdivision (h) gives the trial court discretion "'in the interest of justice pursuant to Section 1385 and at the time of sentencing, to strike or dismiss an enhancement otherwise required to be imposed by this section.'" (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116; see also §12022.53, subd. (h).) We review a trial court's decision to dismiss or to strike a sentencing allegation under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, "'the burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. . . . In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" Second, a "'decision will not be reversed merely because reasonable people might disagree.'"'" (*Id.* at p. 377.)

As relevant here, a trial court abuses its discretion when the factual findings critical to its decision are not supported by substantial evidence. (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 (*Cluff*); *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1065-1066.) As such, while we apply the abuse of discretion standard to the trial court's ultimate determination, we determine whether the trial court's underlying findings of fact are supported by substantial evidence. (See *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 ["The abuse of discretion standard is not a unified standard. . . . The trial court's findings of fact are reviewed for substantial evidence, its

9

conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."].)

## II. Analysis

Appellant contends the trial court abused its discretion in declining to strike the 25-year firearm enhancement in favor of a lesser enhancement. He points to the court's statement that he "made no threats with any kind of weapon" and argues that this finding lacked substantial evidence because of the testimony by Melendez that Chamorro was holding a machete while threatening to strike appellant with it.

We disagree that the court's statements at the hearing demonstrate that the court misunderstood or disregarded the evidence in the record. The court expressly recognized the evidence that Chamorro was holding a weapon "at some point in time" and confirmed that it had reviewed the record, including the moving papers, in which appellant argued that Chamorro threatened him with the machete and was holding the machete at the time of the shooting.

Instead, the trial court's comments at the hearing suggest that the court concluded that Chamorro was not holding the machete at the time of the shooting. Substantial evidence supports this finding. Only Melendez, one of several percipient witnesses, testified to seeing Chamorro with the machete at any time, and he admitted to not telling the police the same information. No machete or other weapon was found near the victim's body, apart from appellant's rifle. Melendez testified that Chamorro was holding the machete during a portion of his argument with appellant, after which point appellant went into the basement and returned with his gun. No evidence in the record before us establishes that Chamorro was holding a weapon

10

at the time appellant shot him. Thus, the trial court's finding was supported by the record.

Substantial evidence also supports the trial court's conclusion that Chamorro never threatened appellant with a weapon. Melendez testified that although Chamorro threatened to strike appellant with the machete, Chamorro kept the weapon at his side and remained seated several feet from appellant throughout the argument. Indeed, defense counsel conceded at trial that there was no evidence Chamorro pointed or swung the machete, or approached appellant while holding it. Thus, although there was evidence that Chamorro verbally threatened to hit appellant with the machete, there was no evidence that Chamorro wielded the machete against appellant or physically threatened him with it. Moreover, the jury rejected appellant's claims of self-defense and imperfect self-defense. Under these circumstances, the trial court's finding that Chamorro "made no threats with any kind of weapon" is supported by substantial evidence.

Given our conclusion that the trial court's findings were supported by the evidence, appellant's reliance on *Cluff, supra*, 87 Cal.App.4th 991 is unavailing. In *Cluff*, the defendant was convicted of failing to register as a sex offender pursuant to section 290. (*Id.* at p. 994.) The trial court denied Cluff's *Romero*[3] motion to strike his prior offenses, finding that he had intentionally violated the registration requirement in order to "obfuscat[e]" his true residence. (*Id.* at p. 1001.) The Court of Appeal reversed, concluding that there was no evidence in the record of any intent by Cluff to deceive or evade law enforcement, particularly where police were able to quickly find him at his

---

[3]    *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

11

registered address. (*Id*. at pp. 994, 1001.) As such, the appellate court found that "the trial court's analysis became disconnected from the evidence and entered the realm of imagination, speculation, supposition, and guesswork," and thus that the court abused its discretion in denying the motion to strike. (*Id*. at p. 1002.) Here, we find no similar speculation by the trial court; rather, the court's findings were supported by the evidence at trial and the jury's verdict.

Additional evidence further supports our conclusion that the trial court was well within its discretion in declining to strike the firearm enhancement. Witnesses testified that appellant appeared angry for most of the day and began arguing with Chamorro about use of a cell phone as soon as Chamorro arrived home. After he retrieved his rifle, he fired a round at Chamorro, remarked that he had missed, and then shot Chamorro with numerous rounds, including two fatal shots to the head. Afterward, appellant left the property while others attempted to resuscitate Chamorro. One witness testified that appellant stated he had shot Chamorro because he "deserved it." On this record, we find no abuse of discretion in the trial court's refusal to strike the section 12022.53, subdivision (d) firearm enhancement or impose a lesser enhancement.[4]

---

[4] For the same reasons we reject appellant's contention that the trial court's decision violated his due process rights.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


MANELLA, P. J


CURREY, J.