Filed 3/17/26  P. v. Mendoza CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BENNY MENDOZA,<br><br>Defendant and Appellant. | F089002<br><br>(Super. Ct. No. F24905383)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Noelle Pebet, Commissioner.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Franson, Acting P. J., Peña, J. and Meehan, J.

Defendant Benny Mendoza contends on appeal that the no-contact criminal protective order (CPO) issued by the court on October 22, 2024 must be reversed and, if necessary, the matter be remanded for further proceedings. The People disagree, and as a threshold issue, argue defendant forfeited the issue because he failed to object at sentencing. We affirm.

## PROCEDURAL SUMMARY

On August 23, 2024, the Fresno County District Attorney filed an amended complaint charging defendant with assault with a firearm (Pen. Code,[1] § 245, subd. (a)(2); count 1); misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 2); corporal injury to a fiancé (§ 273.5, subd. (a); count 3); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 4); and dissuading a witness (§ 136.1, subd. (a)(1); count 5). As to counts 1 and 3, it was further alleged that defendant inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)) and personally used a firearm (§ 12022.5, subd. (a)). As to all counts, it was further alleged defendant suffered three prior strike convictions (§§ 667/1170.12) and was released on bail or own recognizance at the time of the offense (§ 12022.1). The court terminated a no-contact CPO that had been imposed on August 12, 2024, prohibiting defendant from contacting Jane Doe. It then imposed a peaceful contact CPO.

On September 6, 2024, defendant pled no contest to count 5, pursuant to a negotiated plea in exchange for a term of two years in state prison.

On October 22, 2024, the trial court sentenced defendant to two years on count 5, pursuant to the plea agreement. The court terminated the peaceful contact CPO imposed on August 23, 2024. It then imposed a no-contact CPO prohibiting defendant from contacting Jane. Defendant received 157 days of credit.

On November 26, 2024, defendant filed a timely notice of appeal.

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

2.

# FACTUAL SUMMARY[2]

### *Shooting Incident*

On August 4, 2024, police responded to a report of a gunshot victim.  Jane Doe (Jane), the victim and defendant's fiancé, had been shot in the stomach while in a motel room with defendant.

A witness told police that a single gunshot had been fired before Jane left the motel room, screaming for help and saying, "I got shot."

Jane refused to tell police who had shot her during repeated interviews.

Later that evening, police apprehended defendant at a park and found a pistol nearby.  Defendant denied shooting Jane.

Jane and defendant had been staying in the motel room together.  Upon searching the room, they found a firearm case, a black BB gun, an expended bullet, 13 live .40-caliber cartridges, one live .270 cartridge, a small box of ammunition of various calibers, and two firearm holsters.  Security surveillance video recording from the motel showed defendant leaving the room and walking away after the shot was fired, then showed Jane stumbling out of the room.

### *Count 5 (Dissuading a Witness)*

On August 6, 2024, defendant called Jane from jail on a recorded call.  He told her to tell the police she would not testify against him and that she accidentally shot herself.  During the call, defendant referred to a CPO he believed had already been imposed and told Jane to get it removed.

# DISCUSSION

Defendant contends the trial court abused its discretion when it denied his October 22, 2024 oral motion to allow for peaceful contact in the postconviction CPO because there was no CPO in effect on August 6, 2024, when he attempted to dissuade Jane, as he and the court both mistakenly believed.  The People disagree, and as a

---

[2]  The facts underlying the offenses are taken from the probation report.

threshold issue argue defendant forfeited the claim because he failed to object at sentencing.  We agree with the People.

**A.  Background**

*August 4, 2024 – Shooting Incident*

On August 4, 2024, the shooting incident occurred.

*August 6, 2024 – Phone Call from Defendant to Jane Doe*

On August 6, 2024, defendant called Jane from jail and referring to what he believed was an existing CPO, instructed Jane to have it removed.

On August 7, 2024, a complaint was filed.

*August 12, 2024 – First No-Contact CPO Issued*

On August 12, 2024, the trial court imposed the first CPO, which included full no-contact terms.

*August 23, 2024 – Peaceful Contact CPO Issued*

On August 23, 2024, the trial court held a preliminary hearing.  Defense counsel orally moved the court to modify the August 12, 2024 CPO to include peaceful contact with Jane.  The court granted the motion and the August 12, 2024 CPO was terminated. The court issued a new CPO allowing peaceful contact and defendant was advised of and acknowledged the new order's terms as set forth on the record and was served with the new CPO in open court.

*September 6, 2024 – No Contest Plea to Count 5 (Dissuading a Witness)*

On September 6, 2024, defendant pled no contest to dissuading a witness (count 5).  The plea agreement did not include a *Harvey* waiver.  (*People v. Harvey* (1979) 25 Cal.3d 754 [consideration of dismissed counts prohibited when sentencing pursuant to plea bargain].)

*October 22, 2024 – Sentencing Hearing and No-Contact CPO*

On October 22, 2024, the trial court held a sentencing hearing.  When discussing sentencing, the court referred to defendant's August 6, 2024 call to Jane, stating,

> "[T]he jail call [on August 6, 2024,] was most telling because if this had
> been anything other than what it was, which is [defendant] shooting this

victim, he wouldn't have had to say, after I had issued a criminal protective order, that ['] I don't give a fuck about the restraining order. They can kiss my ass, suck my dick, all that.['] It clearly shows [defendant] is not a suitable candidate for probation. [Defendant] goes on to say, ['L]ook, they can't force you to go to court. They can't force you to do nothing. Don't let them tell you to do anything.['] He goes [on to] continue to tell her not to come to court, to say it was all an accident, and even when he gives a statement, he doesn't know why this is in the jail. This is all the victim and [the] victim's fault."

The trial court stated it intended to impose a three-year CPO.

Defense counsel then stated, "We're requesting a peaceful contact order. That's what's been in place I think over the last month. So, we're requesting peaceful contact at this time. And I believe that's what the victim, [Jane Doe], is requesting as well." The victim advocate agreed, "It is, Your Honor."

The prosecution submitted on the issue, stating, "The [peaceful contact CPO] has been what [Jane Doe has] been requesting all along. I don't have anything to add to what's been in the record."

The probation officer then stated, "Your Honor, in light of the lengthy criminal history and the circumstances of the offense, we would recommend full no contact."

The trial court stated, "I agree, considering that [defendant] already violated the [CPO] while in custody. [¶] So, in light of that, the Court is going to issue a three year [no-contact CPO]."

The victim advocate stated, "The victim would appreciate clarification on why peaceful contact was granted in the first place if it is being revoked now."

The trial court denied defense counsel and the victim advocate's request for peaceful contact and imposed a no-contact CPO, stating,

> "Because I didn't do it. And there is no change in circumstances that occurred on August 23rd. And I don't know if that judicial officer knew that the defendant had already violated the criminal protective order before that modification was made. And because based on the information I have regarding the current facts of the case, and the intimidation in that phone call, I'm denying that request."

5.

## B. *Forfeiture*

As a threshold issue, the People contend defendant forfeited the issue of whether the trial court could impose a no-contact CPO on October 22, 2024, because defense counsel failed to object below at the sentencing hearing. They argue that whether there is a defect in the court's statement of reasons when it imposed the no-contact CPO is a simple factual issue that could have easily been corrected at the sentencing hearing, had defendant objected below. We agree.

"[T]he right to challenge a criminal sentence on appeal is not unrestricted. In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits or waives the claim. [Citations.] These principles are invoked as a matter of policy to ensure the fair and orderly administration of justice." (*People v. Scott* (1994) 9 Cal.4th 331, 351.) "That decision holds that while a trial court objection is generally necessary to preserve a claim of sentencing error for appeal, a 'narrow exception' exists when the trial court has imposed an ' "unauthorized sentence." ' [Citation.] A challenged sentence falls within this exception when it 'could not lawfully be imposed under any circumstance in the particular case,' such that it is ' "clear and correctable" independent of any factual issues presented by the record at sentencing.' [Citations.] In contrast, 'claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner.' " (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1309.)

"Courts of Appeal have applied the waiver doctrine to various issues concerning the manner in which sentence is imposed and the hearing is conducted. Most notable are a minority of cases holding that a defendant cannot complain for the first time on appeal about the court's failure to state reasons for a sentencing choice." (*People v. Scott*, *supra*, 9 Cal.4th at pp. 352–353, fn. omitted.) "[T]he waiver doctrine should apply to claims

6.

involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons…. Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*Id.* at p. 353.)

Here, the trial court's statement of reasons shows it mistakenly believed that there was already a CPO in place on August 6, 2024, prohibiting defendant from contacting Jane when he called her from jail to dissuade her from testifying against him. However, while the court was mistaken and there was actually no CPO in place at the time of the phone call on August 6, 2024, defendant did not object during the October 22, 2024 sentencing hearing when the trial court cited that as one of the factors it considered when imposing the no-contact CPO. Had defendant objected, this "[r]outine defect[ ] in the court's statement of reasons" could have easily been prevented and corrected if called to the court's attention. (See *People v. Scott*, *supra*, 9 Cal.4th at p. 353.) Instead, because the court relied on factually flawed reasoning, but the sentence was otherwise permitted by law, defendant forfeited the issue of whether the court abused its discretion when it imposed the no-contact CPO on October 22, 2024. (See *People v. Scott*, *supra*, 203 Cal.App.4th at p. 1309.)

Defendant argues that his failure to object at his sentencing hearing should be excused because such an objection would have been futile after the trial court stated on the record that defendant had violated a CPO when he called Jane from jail. We disagree.

" '[R]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by

7.

substantive law then in existence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 92.) However, although reviewing courts " ' "have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile" ' " (*People v. Perez* (2020) 9 Cal.5th 7–8), this futility exception only applies in " 'unusual circumstances' " or "extreme case[s]." (*People v. Riel* (2000) 22 Cal.4th 1153, 1212, italics omitted)  As explained in *People v. Hill* (1998) 17 Cal.4th 800, the bar is quite high.  There, the California Supreme Court found that the prosecutor's "continual misconduct, coupled with the trial court's failure to rein in her excesses, created a trial atmosphere *so poisonous*" that defense counsel's continual objections would have been "futile and counterproductive to his client." (*Id*. at p. 821, italics added.)  Our high court therefore excused the defendant "from the legal obligation to continually object." (*Ibid*.)  By contrast, our high court in *People v. Hillhouse* (2002) 27 Cal.4th 469 declined to apply the futility exception because "[t]he trial atmosphere … was not poisonous … and the record fail[ed] to establish that objections would have been futile." (*Id*. at p. 502.)

As in *Hillhouse*, there are no "unusual circumstances" warranting the application of the futility exception here.  Nothing in the record suggests that the atmosphere at sentencing was "poisonous" or that defendant's objections would have been futile.  Indeed, as stated above, "[r]outine defects in the [trial] court's statement of reasons are easily prevented and corrected if called to the court's attention" at the hearing.  (*Scott*, *supra*, 9 Cal.4th at p. 353.)  Defendant argues the trial court had already decided to deny his request for a peaceful contact CPO, pointing to the fact that the trial court was mistaken in its belief that there was already a CPO in place when defendant contacted Jane from jail on August 6, 2024, and contacted her.  However, this is purely speculative.  The court's statement gives no indication that it would not have considered the fact that there was not actually a CPO in place at that time, had defendant objected and made the court aware of that fact.  Because the record does not demonstrate that defendant's

8.

objection would have been futile, we find that defendant forfeited any argument against the imposition of the no-contact CPO.

### C. No-Contact Order

However, regardless of whether defendant forfeited the issue, there is sufficient evidence to support the trial court's denial of defendant's October 22, 2024 request for a peaceful contact CPO. Accordingly, we affirm.

Defendant contends the trial court abused its discretion when it denied his request for the October 22, 2024 CPO to allow for peaceful contact between himself and Jane because it relied on its mistaken belief that defendant violated a non-existent CPO when he called her from jail on August 6, 2024.

Section 136.2, subdivision (i) provides that "[w]hen a criminal defendant has been convicted of a crime involving domestic violence, as defined … in Section 6211 of the Family Code, … the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime." (§ 136.2, subd. (i).) Although the statute does not expressly provide for it, a court may order "peaceful contact" with the named victim instead of "no contact." (See *People v. Fuentes* (2023) 87 Cal.App.5th 1286, 1290 [ordering peaceful contact with girlfriend].)

"We review issuance of a protective order for abuse of discretion, and the factual findings necessary to support the protective order are reviewed for substantial evidence. [Citations.] 'We resolve all conflicts in the evidence in favor of respondent, the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings.' " (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, disapproved of on other grounds as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) However, "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) Review on direct appeal "is limited to facts in the appellate record." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1372.)

Here, the record shows the court based its denial of defendant's request for peaceful contact on the circumstances of the case, including his dissuasion of Jane from testifying as well as the facts of the underlying incident, rather than solely on the belief that there was already a CPO in place when he called her. While the trial court incorrectly stated that defendant had violated a CPO when he made the call, it correctly noted that defendant called Jane to dissuade her from testifying. As the court stated, "[Defendant] goes on to say [to Jane], ['L]ook, they can't force you to go to court. They can't force you to do nothing. Don't let them tell you to do anything.['] He goes [on to] continue to tell her not to come to court, to say it was all an accident, and even when he gives a statement, he doesn't know why this is in the jail. This is all the victim and [the] victim's fault." The court also noted that it relied on the facts of the case, including surveillance video that showed defendant leaving the hotel room after a gunshot, before Jane stumbled out of the room, and witness testimony that a single gunshot had been fired before Jane left the motel room, screaming for help and saying, "I got shot," because, as the court explained, "based on the information I have regarding the current facts of the case, and the intimidation in that phone call, I'm denying that request." Accordingly, regardless of defendant's forfeiture of the issue by failing to object below, there is sufficient evidence to support the trial court's denial of his October 22, 2024 request for a CPO allowing peaceful contact with Jane.

## DISPOSITION

The judgment is affirmed.