Filed 5/20/26  P. v. Gregory CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>WALTER GREGORY,<br>　　　Defendant and Appellant. | C104041<br><br>(Super. Ct. No. 53531) |

Defendant Walter Gregory appeals from the trial court's denial of a petition for compassionate release pursuant to Penal Code section 1172.2,[1] which authorizes a trial court to recall the sentence of an incarcerated person who is permanently medically incapacitated and unable to complete activities of daily living.  Although the People conceded defendant is medically eligible for compassionate release, they argued, and the trial court found, that compassionate release should be denied because there is an unreasonable risk that, if released, defendant will commit a new violent felony known as a "super strike."  Defendant contends the trial court abused its discretion in making that finding because there is insufficient evidence to support it.

This is a close case, and we certainly understand the concerns articulated by the People and the trial court.  Defendant's commitment offense is one of the worst we have

---

[1] This court granted defendant's motion for calendar preference.  Undesignated statutory references are to the Penal Code.

1

reviewed, and as recently as 2022, defendant voiced inappropriate sexual desire. But the evidence shows that since then, defendant's physical and mental condition has deteriorated dramatically, to the point that he is now mostly bedridden, wears a diaper, and cannot care for himself. The evidence further shows that he has been discipline-free for more than two decades, and that a May 2025 diagnostic study report identified his risk assessment score as low.

The Penal Code imposes a presumption favoring compassionate release for medically-eligible individuals and, as to the risk of re-offense, requires an assessment not of whether a new crime would be theoretically possible, but whether there would be an unreasonable risk of a super strike as defined by the law. On this record, we conclude there is insufficient evidence of an unreasonable risk that defendant would commit a super strike if granted compassionate release. Accordingly, we will reverse the trial court's order denying the petition for compassionate release and direct the trial court to recall defendant's sentence in accordance with section 1172.2.

BACKGROUND

In 1979, a jury found defendant guilty of first degree murder (§ 187) and found true an enhancement allegation that he used a knife during the commission of the offense (§ 12022, subd. (b)). The trial court sentenced defendant to life in prison plus one year for the weapon enhancement.

The probation report and an institution programming summary from 1979 detailed the facts underlying defendant's offense. Defendant stabbed his 41-year-old victim numerous times, cut out her eyeballs, and severed her vaginal area from her body. Defendant brought the severed body parts to his room and used them for masturbation.

As part of a comprehensive risk assessment in 2021, a forensic psychologist interviewed and evaluated defendant. The risk assessment stated that defendant had several rules violations while incarcerated, including (1) masturbation in front of female staff in 1989, (2) indecent exposure in 1990, (3) masturbation in the prison yard in 1997,

2

(4) lewd behavior/masturbation in 1998, and (5) attempted battery on an inmate with a weapon in 2002.  According to the assessment, defendant had no rules violations since 2002.

The 2021 assessment indicated that defendant "presented with a long history of intense and persistent sexual interest across a number of settings."  According to the assessment, he had previously been diagnosed with paraphilia not otherwise specified (NOS), transvestic fetishism, sexual sadism, exhibitionism, and necrophilia.  The assessment found the following diagnoses indicated:  unspecified neurocognitive disorder; unspecified schizophrenia spectrum or other psychotic disorder; borderline intellectual functioning; unspecified paraphilic disorder; and adult antisocial behavior.

The assessment stated that a low risk rating had been considered for defendant due to his significant and progressive cognitive decline, participation in treatment activities, and ability to remain discipline free since 2002.  But the forensic psychologist ultimately concluded in the 2021 assessment that defendant represented a moderate risk of violence if granted parole, explaining:  "While [defendant] appeared to have a significant decrease in trouble related to inappropriate sexual behavior, he will likely continue to struggle with appropriate boundaries related to a long history of sexual preoccupation, severe mental illness, and progressive cognitive decline.  It is unlikely that this sexual preoccupation will resolve without meaningful engagement in treatment.  While [defendant] did not appear to have the physical capacity to cause significant physical injury to another, he likely still has the capacity to offend sexually."

At a parole hearing in 2022, defendant was asked if, when he currently masturbates, "does he think about … stabbing the victim or using her body part … to masturbate with."  Defendant initially responded, "No, I don't" but then said, "That, that, it would be nice.  That would be nice."  He then again said, "No, no, it wouldn't." The parole board denied parole, concluding that defendant posed an unreasonable risk to

3

public safety and would engage in "sexual violent deviant behavior" because of his "continued … sexual preoccupation, sexual proclivities with the paraphilic disorder."

However, in 2023, the parole board granted defendant medical parole, as defendant had experienced dementia since 2018. The board determined that defendant's release on medical parole would not pose a threat to public safety given that various restrictions would be in place. Among other things, defendant would be housed at a skilled nursing facility; he would not be permitted to leave the facility without written approval from a parole agent, except in a medical emergency; and defendant would need prior approval from a parole agent for visitation.

A medical chronology dated May 2, 2025, stated that defendant was 84 years old at the time and had been diagnosed with severe dementia. It described defendant as permanently medically incapacitated and unable to complete activities of daily living. According to the 2025 chronology, defendant had a rigid contracture deforming his right hand; he was frail and underweight; he was able to walk short distances with a walker but used a wheelchair for longer distances; he was at high risk for falls when attempting to ambulate or transfer to uneven surfaces; he was dependent on caregivers for bathing and dressing; and he was incontinent and used adult diapers. The chronology explained that defendant had been at a skilled nursing facility from March 2023 until sometime in 2024, when the contract between the Department of Corrections and Rehabilitation (CDCR) and the facility ended. At that point, defendant was transferred to a medical correctional treatment center.

In May 2025, CDCR informed the trial court of its determination that defendant met the criteria for consideration of compassionate release under section 1172.2. CDCR attached a May 2025 diagnostic study report identifying defendant's risk assessment score as low. The public defender filed, on defendant's behalf, a motion asking the trial court to treat the CDCR letter as a petition for compassionate release.

4

In opposition, the People conceded that defendant had a qualifying medical condition but argued he posed an unreasonable risk of committing a sexual super strike if released. According to the People, defendant's medical parole had restrictions that were not included in defendant's plan for compassionate release, and defendant's plan did not require a facility that could properly supervise defendant or address his mental health problems and sexual preoccupations in a manner that would protect the public.

At a hearing in June 2025, Dr. Faiza Rading testified that she had reviewed defendant's medical records and the recommendations in this case. She said defendant weighed about 114 pounds, and the parties represented that his height was five feet eight inches. She characterized defendant as being underweight due to muscle atrophy and stated he was significantly less physically capable than he was in October 2024. Dr. Rading testified that defendant's dementia was advanced; he could give one-word responses but could not hold a conversation. Most of the time he was confused. She said defendant spent most of his time in bed, did not walk on his own, used a wheelchair, and needed assistance getting into it. According to Dr. Rading, defendant was supervised as a fall risk. He could use his arms, but he had a contracture on his right hand due to a prior accident. Dr. Rading explained that, due to his advanced dementia, defendant did not understand when he needed to go to the bathroom or take a shower. Rather, "[h]e needs to be prompted for every activity that he needs to do," including eating. Dr. Rading testified "[h]e cannot make a decision on his own to do anything." She said she was not aware of any incidents while defendant was at a nursing facility on medical parole from March 2023 to October 2024. In response to questions from the trial court, Dr. Rading admitted she had not spent time with defendant; she was reporting the information in his medical charts.

The trial court began its analysis by noting the People's concession that defendant had a qualifying medical condition. It then considered whether there was an unreasonable risk that defendant would commit a super strike if granted compassionate

5

release. The trial court explained that the statute listed a number of super strike offenses and some sexual offenses might be applicable, adding that the homicide and surrounding circumstances were sadistic and atrocious.

The prosecutor argued: "[I]t does not take much physical capacity to commit one of those offenses. … And his probation report, his packet, indicates that this is a severely sexually-disturbed, psychiatrically-disturbed individual who does maintain some level of physical capacity. He can move his arms. He can move his hands. [¶] … It seems right now, he's under … 24/7 supervision. He doesn't have visitors. He doesn't really interact with others. But it seems that that's primarily based on his custody status, though there's medical fall risk involved, I understand. But … were he to be … exposed to members of the public, children, visitors, … he could pose an unreasonable risk of committing a super strike -- a sexual super strike among such a population without proper supervision."

Defense counsel emphasized that defendant had not had any rules violations in over 24 years and that there were no incidents while defendant was on medical parole at a nursing facility for approximately 18 months. Defense counsel also discussed how defendant may not be physically capable of committing a crime given his weight loss and the degree of his physical limitations.

The prosecutor noted, however, that defendant could still reach out to anyone standing next to his bed, including a child, and commit a sexual offense against them, as "it doesn't take hardly any physical muscle capacity to reach over and assault or grope someone." The prosecutor said that when defendant was on medical parole there were restrictive conditions, but if defendant were granted compassionate release those conditions would not be in place. According to the prosecutor, if defendant were released other patients at his care facility would be vulnerable.

The trial court said it would not take much movement to commit a sexual offense -- the touching of a body part with sexual intent could be a lewd and lascivious act, even over clothing -- and some of defendant's comments indicated a sexual propensity or

6

predilection. The trial court cited the 2021 risk assessment statement that defendant represented a moderate risk of violence, and quoted its conclusion that although defendant did not appear to have the physical capacity to cause significant physical injury to another person, he likely still had the capacity to offend sexually. The trial court found that defendant posed an unreasonable risk of danger to public safety as defined in the statute and denied the petition for compassionate release.

DISCUSSION

Defendant contends the trial court abused its discretion in denying the petition for compassionate release. A superior court abuses its discretion when the factual findings essential to its decision lack evidentiary support. (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) The superior court's factual findings are reviewed for substantial evidence. (*In re White* (2020) 9 Cal.5th 455, 470.)

Section 1172.2 authorizes a trial court to recall the sentence of an incarcerated person who is "permanently medically incapacitated with a medical condition or functional impairment that renders them permanently unable to complete basic activities of daily living." (§ 1172.2, subd. (b)(2).) If the trial court finds that an incarcerated person satisfies this criterion, the statute establishes a presumption favoring recall and resentencing that "may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of [s]ection 1170.18, based on the incarcerated person's current physical and mental condition." (§ 1172.2, subd. (b).) Under section 1170.18, subdivision (c), an unreasonable risk of danger to public safety is an unreasonable risk that the petitioner will commit a "super strike," which includes any homicide or attempted homicide offense, any serious or violent felony offense punishable by life imprisonment or death, and certain sexually violent offenses. (§§ 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv).)

One of the sexually violent offenses that qualifies as a super strike is sexual penetration under section 289. (§ 667, subd. (e)(2)(C)(iv)(I); Welf. & Inst. Code, § 6600,

subd. (b).)  The People argue the evidence supports a conclusion that defendant "is likely to use his remaining physical capacity to commit a violation of section 289, such as by penetrating a vulnerable woman's vagina using his arms and hands."  We disagree that the evidence supports such a conclusion given defendant's deteriorated condition.

Section 289, subdivision (a)(1)(A) provides that "[a]ny person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."  Sexual penetration is defined as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object."  (§ 289, subd. (k)(1).)  Foreign object, substance, instrument, or device is in turn defined to "include any part of the body, except a sexual organ."  (§ 289, subd. (k)(2).)

Defendant is in his mid-80's and he has severe dementia.  He is confused most of the time and cannot converse other than by providing single word responses.  He is frail, underweight, and significantly less physically capable due to muscle atrophy than he was just nine months prior to the trial court's hearing.  He is at high risk for falling and there is evidence that the use of his right hand is compromised.  He spends most of his time in bed and either cannot walk on his own or can walk only short distances with a walker.  He needs assistance getting into a wheelchair and is entirely reliant on others for his daily living activities.  He needs to be prompted to perform even basic tasks, such as eating, and cannot make decisions on his own.

To be sure, there is substantial evidence that, as recently as 2022, defendant expressed inappropriate sexual desire when he said "[t]hat would be nice" in reference to thinking about masturbating with his victim's body parts.  Also, his 2021 risk assessment

noted he "likely still has the capacity to offend sexually" despite "not appear[ing] to have the physical capacity to cause significant physical injury to another." But the evidence also establishes that defendant's physical and cognitive condition has significantly declined since that time. The evidence further shows that he has been discipline-free for more than 20 years. In addition, there is no evidence defendant engaged in any inappropriate conduct while he was released to a nursing facility on medical parole from March 2023 to October 2024, nor any evidence of inappropriate incidents since that time. The May 2025 diagnostic study report identified his risk score as low.

Even if the evidence does not support the conclusion of an unreasonable risk that defendant would commit a sexual penetration, the trial court nevertheless suggested it would not take much movement to commit a lewd or lascivious touching. However, the People do not argue for such a scenario on appeal, perhaps because such an act would only rise to the level of a super strike if it involved the touching of a child with sexual intent.[2] There is no evidence defendant has ever shown sexual interest in a child, and in any event, there is no evidence of an unreasonable risk that he would have access to a child in the type of memory care facility his deteriorated condition would require if released.

*People v. Lewis* (2024) 101 Cal.App.5th 401, is instructive. There, the trial court denied a petition for compassionate release after finding that the defendant, who had been convicted of first degree murder, presented an unreasonable risk of committing a super

---

[2] It is a super strike offense to commit a lewd or lascivious act involving a child under 14 years of age under section 288. (§ 667, subd. (e)(2)(C)(iv)(III).) Section 288, subdivision (a) provides that "a person who willfully and lewdly commits any lewd or lascivious act … upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony." Courts have interpreted a lewd or lascivious act to mean any touching of an underage child committed with the intent to sexually arouse either the defendant or the child. (*People v. Martinez* (1995) 11 Cal.4th 434, 442, 444.)

strike. (*Id*. at pp. 404, 407-408.) In making that finding, the trial court relied on (1) the nature of the murder offense; (2) the defendant's other criminal convictions; (3) a diagnostic study's assertion that the defendant " 'retain[ed] the capacity to commit or to influence others to commit criminal acts that endanger public safety' "; and (4) the defendant's association with a street gang. (*Id*. at p. 407; see i*d*. at pp. 407-408.) The appellate court ruled that the trial court abused its discretion in denying the petition. According to the appellate court, the defendant's "capacity" to commit a super strike offense did not necessarily establish an unreasonable risk that he would commit such an offense. (*Id*. at p. 409.)

Here, as in *Lewis*, defendant may have the capacity to commit a super strike. But controlling law requires a greater showing. Although defendant's commitment offense was atrocious, the evidence of his subsequent physical and mental deterioration, inability to care for himself, record of being discipline-free for over two decades, and 2025 low-risk score, leads us to conclude that there is insufficient evidence of an unreasonable risk that he would commit a super strike if granted compassionate release.

DISPOSITION

The trial court's order denying the petition for compassionate release is reversed. The trial court is directed to recall defendant's sentence in accordance with section 1172.2.

/S/ _____
MAURO, J.

We concur:

/S/ _____
EARL, P. J.

/S/ _____
KRAUSE, J.

10